MENYUK, J.T.C.
Plaintiff contests a final determination by the Director, Division of Taxation (“Director”), denying an administrative review of a notice of assessment related to final audit determination because the plaintiffs protest had been untimely filed. Defendant Director now moves for summary judgment, contending that the complaint must be dismissed because there is no dispute that the protest was filed beyond the period permitted by statute and that this court lacks jurisdiction to hear the matter.
Plaintiff resists the motion to dismiss the complaint on the ground that, subsequent to the issuance of the final determination letter and the filing of the complaint, plaintiff and its lawyer and other representatives met with representatives of the Division of Taxation and reached an agreement to examine plaintiffs tax records for tax year's subsequent to the audit years and to apply retroactively the results of the re-audit to the tax years in issue *151 here. It is plaintiffs position that it relied on that agreement, spent substantial sums to prepare for the re-audit, and that the Division may not now renege on the agreement. Its argument is based on case law holding that the Division must “turn square corners” when dealing with taxpayers. F.M.C. Stores Co. v. Boro. of Morris Plains, 100 N.J. 418, 426, 495 A.2d 1313 (1983). For the following reasons, 1 conclude that 1 lack jurisdiction over the action and that the Director’s motion must be granted.
I find the following facts. Plaintiff operates a restaurant known as Harry’s Lobster House in Sea Bright. The Division of Taxation (“Division”) conducted an audit of plaintiff and issued a notice of assessment related to final audit determination dated May 8, 2003. The notice assessed deficiencies of corporation business tax for the years 1997 through 2000, gross income withholding tax for the year 1999, litter tax for the years 1998 through 2000, and sales and use tax for the period October 1, 1997 through September 30, 2001. All told, the deficiencies set forth in the notice of assessment amounted to $603,463.83, including penalties and accrued interest. The notice of assessment was mailed to plaintiff by certified mail and signed for by plaintiffs president, Louis Ja-coubs, on May 12, 2003.
The notice of assessment fully set forth plaintiffs rights to appeal the assessment determination, either by requesting, in writing, an informal administrative hearing within ninety days of the date of the notice, or by filing an appeal with the Tax Court within ninety days. In his certification submitted in opposition to the Director’s motion, Mr. Jacoubs freely admits that he did not read the portion of the notice relating to the deadline for protests and appeals.
According to Mr. Jacoubs’ certification, the restaurant had been operated for many years by his parents until 1987, when he assumed responsibility for the management and control of the restaurant business. He is both the chef and the person in charge of plaintiffs business operations. He readily admits that he failed to keep complete records for the period covered by the tax audit.
According to Mr. Jacoubs, when he received the notice of assessment, he contacted his accountant, who initiated discussions *152 with the Division. Mr. Jacoubs stated that he recalled attending a meeting with the Division, where the Division made it clear that it would not adjust the audit determination based on the information that he and his accountant brought to the meeting. The record does not indicate when that meeting took place.
In any event, plaintiff did not file a protest of the notice of assessment with the Director or a complaint with this court at that time. Rather, Mr. Jacoubs contracted with an entity called American Tax Relief of Los Angeles, California, paid that organization more than $17,500, and left the matter of the tax assessment in its hands. Mr. Jacoubs determined to contract with American Tax Relief based on a postcard advertisement sent to him. The sum total of activities undertaken by American Tax Relief on behalf of plaintiff appears to have been a letter dated December 2, 2003, addressed to the Division, requesting an administrative hearing and audit reconsideration.
On or about December 1, 2003, a New Jersey attorney (not plaintiffs current counsel) filed a written protest with the Division on behalf of the plaintiff corporation, contesting the notice of assessment related to audit determination and notice and demand for payment of tax,[1] and requesting an administrative hearing. The written protest also contested a letter dated September 4, 2003, in which the Division had notified Mr. Jacoubs of its determination that he was personally responsible for some of the taxes assessed against the plaintiff. See, e.g., N.J.S.A. 54:32B-14(a) (providing that every person required to collect any sales or use tax is personally liable for the tax) and N.J.S.A. 54:32B-2(w) (defining “persons required to collect tax” to include an officer or employee of a corporation under certain circumstances); see also N.J.S.A. 54A:9-6(f) and N.J.S.A. 54A:9-6(¿) (similar provisions relating to gross income withholding taxes).[2]
*153 The Division responded with a letter dated January 26, 2004, stating that the notice of assessment had been issued on May 8, 2003, that N.J.S.A. 54:49-18 requires that a request for a hearing must be made within the ninety day period from the date of the Division’s notice, and that the protest period had expired on August 6, 2003. The letter continued by stating that, because no protest had been filed within the ninety day period, the request for a hearing could not be granted and the assessment was now fixed. The letter concluded with a sentence indicating that if the plaintiff was not in accord with the determination regarding the timeliness of the protest, a complaint could be filed with the Tax Court within ninety days of the date of the letter.
The complaint in this action was filed on April 12, 2004 by plaintiffs current counsel. Proof of service was not filed until May 17, 2004. The certification as to mailing stated that the complaint and case information statement were mailed to the Attorney General on May 12, 2004, one month after the filing of the complaint. There is no indication that plaintiff ever served the complaint on the Division. See, R. 8:5 — 4(4) (requiring service of the complaint on the state agency involved by leaving a copy with the director of the agency or mailing a copy to the director of the agency); see also R. 8:5-4(6) (requiring service upon the Attorney General in accordance with the provisions of R. 4:4 — 4(a)(7)).[3]
In the complaint, plaintiff contested the accuracy of the audit and contended that it did not receive a notice of assessment and was not aware of its rights of protest and appeal. As stated above, Mr. Jacoubs now concedes that he did receive the notice and that it did set forth plaintiffs appeal rights, but that he did not read the notice.
*154 According to Mr. Jacoubs’ certification, within a few weeks after the complaint had been filed, his current attorney arranged for a meeting with the Division in Trenton.[4] Mr. Jacoubs stated that the meeting was held on May 20, 2004, that it lasted nearly two hours, and that there was “vigorous back and forth.” He stated that, by the end of the meeting, Ms. DiPasquale, the supervisor of the auditor who conducted the original audit, agreed to conduct another audit based upon the plaintiffs records for a time period subsequent to the period covered by the original audit. Mr. Jacoubs had apparently begun to keep more complete records following the original audit determination and he asserted that Ms. DiPasquale was clear that the purpose of the re-audit was to utilize the records of a year subsequent to the audit period in order to arrive at a fair figure for the years that were the subject of the original audit. According to Mr. Jacoubs’ certification, the new audit was conducted by four auditors in June 2004, and that it cost plaintiff several thousand dollars in order to arrange the documents in an intelligible manner. Mr. Jacoubs added that it is his understanding that his attorney was in verbal and written contact with Ms. DiPasquale’s office during this period.
In a certification dated December 15, 2005, plaintiffs attorney confirmed Mr. Jacoubs’ description of his involvement in the arrangements for the meeting. The attorney stated that in setting up the meeting and arranging for the actual re-audit, which was conducted at his office, he discussed the pending litigation with Ms. DiPasquale. Plaintiffs attorney’s certification of December 15, 2005 and an earlier certification dated November 9, 2005, also confirm that the meeting at which the re-audit was discussed took place on May 20, 2004 (eight days after the complaint had been mailed to the Attorney General), at the Director’s offices in Trenton and that the meeting was attended on behalf of the Division by Ms. DiPasquale, as well as the auditor who conducted *155 the original audit. Attending on behalf of plaintiff were Mr. Jacoubs, plaintiffs attorney, plaintiffs accountant, a State Assemblyman, Mr. Moore (identified as a representative of the State Department of Commerce), and William Wolf, a friend and advisor to Mr. Jacoubs.
Ed Vraneik, the Assistant Chief of the Division of Taxation’s Conference and Appeals Branch, whose certification was submitted in support of the Director’s motion, agreed that the auditor met with plaintiffs attorney on May 20, 2004 to discuss the audit, and that on June 21, 2004, auditors met with plaintiffs attorney to examine additional records for the audit period. Mr. Vraneik asserted that, because the Division had not been served with the Tax Court complaint, it had no knowledge that a complaint had been filed with the Tax Court. He stated that on July 19, 2004, the Attorney General’s office notified the Division that a complaint had been filed and forwarded a copy to the Division. Mr. Vraneik certified that, on August 25, 2004, the Attorney General’s office advised the Division of Taxation to cease all communications with plaintiff based upon the fact that an appeal had been filed with this court.
In his December 15, 2005 certification, plaintiffs attorney stated that, during the May 20, 2004 meeting with Ms. DiPasquale and the auditor, the pending Tax Court appeal was mentioned several times. A letter dated May 18, 2004 from plaintiffs attorney to Ms. DiPasquale, appended to plaintiffs attorney’s November 9, 2005 certification, plainly mentions this litigation, including the docket number. As pointed out by the Deputy Attorney General representing the Division on this motion, the Attorney General’s office was not copied on either that letter or on two subsequent letters from plaintiffs attorney to Ms. DiPasquale.
Defendant’s motion is made pursuant to R. 4:46, which provides that summary judgment should be granted when “the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law.” R. 4:46-
*156 2(c). “By its plain language, Rule 4:46-2 dictates that a court should deny a summary judgment motion only where the party opposing the motion has come forward with evidence that creates a ‘genuine issue as to any material fact challenged.’” Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 529, 666 A.2d 146 (1995). The court must consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party. Id. at 540, 666 A.2d 146.
It is apparent from the conflicting certifications submitted in support of and in opposition to defendant’s motion that there are numerous factual disputes surrounding the May 20, 2004 meeting between plaintiffs representatives and the Division’s representatives. The parties agree, however, that plaintiff filed its protest of the May 8, 2003 Notice of Assessment related to final audit determination on December 1, 2003, well past the ninety days permitted by statute. The State Uniform Tax Procedure Law, N.J.S.A. 54:48-1 to 54:53-18, sets forth the provisions for the protest and appeal of tax assessments, except where a specific taxing statute provides otherwise. N.J.S.A. 54:48-4. N.J.S.A. 54:49-18(a) provides that a taxpayer may protest any finding or assessment of the Director and request an administrative hearing by filing a written protest within ninety days after the giving of the notice of the finding or assessment. The Director is obliged to make a final determination confirming, modifying or vacating the finding or assessment. Ibid. A taxpayer may appeal that final determination to this court within ninety days of the date of the action sought to be reviewed. N.J.S.A. 54:51A-13 and -14.
There is nothing in the specific taxing statutes implicated here that contradicts the ninety day period for filing administrative protests set forth in N.J.S.A 54:49-18. The former litter control tax specifically provided that administration of that tax was to be governed by the State Uniform Tax Procedure Law. See N.J.S.A. 13:1E-99.1h (repealed subsequent to the tax periods in issue here by L. 2002, e. 128, § 12). The Gross Income Tax Act, N.J.S.A. 54A:1-1 to 54A:9-29, provides:
*157 Notice of deficiency as assessment. After 90 days from the mailing of a notice of deficiency, such notice shall be an assessment of the amount of tax specified in such notice, together with the interest, additions to tax and penalties staled in such notice, except only for any such lax or other amounts as to which the taxpayer has within such 90-day period filed with the director a petition under section 54A:9-9. If the notice of deficiency is addressed to a person outside of the United States, such period shall be 150 days instead of 90 days.
[N.J.S.A. 54A:9-2(b)].
See also N.J.S.A. 54A:9-9(b) (providing that a taxpayer may file a petition with the Director for redetermination of a tax deficiency within ninety days after the mailing of the notice of deficiency).
N.J.S.A. 54:32B-19, a section of the Sales and Use Tax Act, N.J.S.A. 54:32B-1 to -29, states:
If a return required by this act is not filed, or if a return when filed is incorrect or insufficient, the amount of tax due shall be determined by the director from such information as may be available. If necessary, the tax may be estimated on the basis of external indices, such as stock on hand, pui’chases, rental paid, number of x-ooms, location, scale of rents or charges, eompax-able rents or charges, type of accommodations and service, number of employees or other factors. Notice of such determination shall be given to the pex-son liable for the collection or payment of the tax. Subject to the px'ovisions of the State Tax Uniform Pi’ocedure Law, R.S. 54:48-1 et seq., such determination shall finally and irrevocably fix the tax unless the person against whom it is assessed, within 00 days after gioing of notice of such determination, shall apply to the director for a hearing, or unless the directin' of his own motion shall redetermine the same. After such hearing the director shall give notice of his determination to the person against whom the tax is assessed.
[Emphasis added].
In this case, the Division’s January 26, 2004 letter denying review of the original assessment because the protest was filed out of time, makes plain that, at the time that the protest was first considered by the Division, the Director did not elect “of his own motion” to redetermine the tax assessed in the May 8, 2003 notice of assessment related to final audit determination.
As an alternative remedy, a taxpayer may appeal an assessment directly to the Tax Court within ninety days of the action sought to be reviewed, and bypass the administrative protest. N.J.S.A. 54:51A-13 and -14. See Harris Corp. v. Director, Div. of Taxation, 15 N.J. Tax 119, 127 (Tax 1995) (holding “there is no [statutory] requirement that a taxpayer exhaust administrative remedies before filing a complaint in the Tax Court”). See also N.J.S.A. 54:82B-21(a) (sales and use tax); N.J.S.A. 54A:9-10(a) *158 (gross income tax withholding); and N.J.S.A. 54:10A-19.2(a) (corporation business tax). Plaintiff in this case did not seek direct review of the assessment with the Tax Court, but proceeded byway of an untimely protest to the Division.
The courts of this State have consistently held that strict compliance with statutory deadlines in tax statutes is an unqualified jurisdictional imperative. F.M.C. Stores Co. v. Boro. of Morris Plains, 100 N.J. 418, 424-25, 495 A.2d 1313 (1985); Clairol v. Kingsley, 109 N.J.Super. 22, 25, 262 A.2d 213 (App.Div.), aff'd 57 N.J. 199, 270 A.2d 702 (1970), appeal dismissed, 402 U.S. 902, 91 S.Ct. 1377, 28 L.Ed.2d 643 (1971); Peoples Exp. Co., Inc. v. Director, Div. of Taxation, 10 N.J. Tax 417, 433 (Tax 1989). Such statutory deadlines may not be relaxed. F.M.C. Stores, supra, 100 N.J. at 424-25, 495 A.2d 1313; Black Whale Inc. v. Director, Div. of Taxation, 15 N.J.Tax 338, 347 (Tax 1995).
“Statutes of limitation in tax statutes are strictly construed in order to provide finality and predictability of revenue to state and local government.” Bonanno v. Director, Div. Taxation, 12 N.J. Tax 552, 556 (Tax 1992). See also, F.M.C. Stores Co., supra, 100 N.J. at 424-25, 495 A.2d 1313. Cf. Commercial Refrigeration and Fixture Co. v. Director, Div. of Taxation, 184 N.J.Super. 387, 2 N.J. Tax 415, 419, 446 A.2d 210 (Tax 1981) (holding that after the then two-year limitation period for the filing of a refund application had passed, the State was entitled to assume that its tax revenues need not be refunded under any circumstance). As explained in Franklin Tp. v. Dep’t of Envtl. Prot., 7 N.J. Tax 224 (Tax 1984), aff'd 7 N.J. Tax 657 (App.Div.1985):
The underlying purpose of this policy [of requiring strict adherence to statutes establishing filing deadlines as a jurisdictional prerequisite to having tax matters heal’d and subjecting tax determinations to review in a mandatory manner in strict conformity with statutory time limitations] is to provide a point at which decisions become final and litigation comes to an end because finality with regard to tax matters is particularly important due to the State’s dependence upon taxation to carry on the affairs of government and the need to predict the revenues so necessary to its proper functioning. If time limitations imposed on the right of challenge in governmental fiscal matters were subject to extensions and exceptions the amount of revenue available to the State could not be conclusively established. Common limitation periods insure predictability of revenues.
[Id. at 231 (citations omitted).]
*159 In Portuguese Spanish Palace Carp. v. Director, Div. of Taxation, 20 N.J. Tax 100 (Tax 2002), the Tax Court dismissed a complaint protesting a final determination of the Director declining to grant a hearing where, as here, the taxpayer failed to file an administrative protest or a complaint in the Tax Court within ninety days of the notice of assessment.[5] Although the court cited a lack of jurisdiction as its basis for dismissing the complaint, id. at 101, it is probably more precise to state that the Tax Court has the jurisdiction to determine whether or not the Director correctly denied plaintiff an administrative hearing because the protest was filed beyond the period permitted by statute. If the Director’s determination was correct, this court lacks jurisdiction to consider the merits of the complaint. Based on N.J.S.A. 54:49-18 and the case law cited above, the Director correctly determined that plaintiffs protest was filed out of time and that the assessment had been fixed ninety days after the notice of assessment was issued.
Because the complaint contests the January 26, 2004 letter denying review of the original assessment on the ground that the protest was filed out of time, and the plaintiff seeks judicial review on the merits of its complaint regarding the conduct of the audit, it appears that the Director is entitled to an order of summary judgment dismissing the complaint. Although plaintiff concedes that the protest was not timely, it contends that the complaint should not be dismissed because the Division is bound by its subsequent agreement to re-audit plaintiffs business based on plaintiffs business records covering time periods after the audit period.
*160 Following the initial oral argument on this motion, I indicated to the attorneys that there was no dispute that plaintiff had filed its protest with the Division well out of time, and that the Director had correctly determined that he could not consider an administrative protest at that late date. I also concluded, however, that there was a significant legal issue that had yet to be directly addressed by the parties, namely, whether the Director had any authority to reach any agreement that would revoke or modify the original assessment. I asked counsel to submit briefs on the issue and heard additional oral argument. At that time, I advised counsel that, if I concluded that the Director had authority to agree to re-audit the plaintiff following the filing of the complaint, I would then direct a hearing on the factual issues surrounding the May 20, 2004 meeting. If I decided that the Director had no such authority, I would grant the Director’s motion and dismiss the complaint.
Generally speaking, an administrative agency has the power to reopen or reconsider a matter, except as that power is otherwise qualified by statute. Handlon v. Belleville, 4 N.J. 99, 106, 71 A.2d 624 (1950); see also Burlington Cty. Evergreen Park Mental Hosp. v. Cooper, 56 N.J. 579, 600, 267 A.2d 533 (1970) (“In the absence of some legislative restriction, administrative agencies have the inherent power to reopen or to modify and to rehear orders that have been entered. Of course, the power must be exercised reasonably and application seeking its exercise must be made with reasonable diligence.”).
The Director contends that an appeal to this court is the exclusive statutory remedy available to any taxpayer for review of a determination of the Director that has become final by virtue of the issuance of a final determination following an administrative protest or a determination that has become final by virtue of the taxpayer’s election to appeal directly to this court without seeking a timely review by the Director. The Director relies upon N.J.S.A. 54:51A-16 (appeal to this court is the exclusive remedy available to the taxpayer for review of an action of the Director with respect to a tax matter), and N.J.S.A. 54:32B-21(b) (appeal to the Tax Court of any assessment under the Sales and Use Tax Act *161 is the exclusive remedy available for review of a decision); see also N.J.S.A. 54A:9-10(c) (to the same effect with respect to assessments made under the Gross Income Tax Act).
The Director’s assertion is not entirely correct. N.J.S.A. 54:32B-19, quoted earlier in this decision, provides that the Director, of his own motion, may redetermine a sales and use tax deficiency. Although the statutory language is not crystal clear, it would appear to permit the Director to make such a redetermination at any time, even after the Director has declined to hear a protest because it is untimely and the assessment has already become fixed. N.J.S.A. 54:32B-19 is a section of the Sales and Use Tax Act and applies solely to that tax.
It is debatable whether any agreement reached at a meeting after “vigorous back and forth,” can be regarded as an undertaking to redetermine the tax made on the Director’s own motion. For purposes of this summary judgment motion, I will assume that it was, and that the Division representatives agreed to redetermine plaintiffs tax liability for the period that is the subject of the assessment based on its records for a subsequent period.
Although the Director is authorized to redetermine the sales tax liability on the Director’s own motion, that authority is not without limits. This court has previously held that closing agreements or agreements compromising a tax liability are subject to strict statutory standards. In Black Whale, supra, the taxpayer argued that it should be permitted to rely on a letter from a Division investigator to the effect that its purchases of two boats were exempt from sales tax and that the purchase of a third boat was taxable. After the taxpayer had paid the tax on the third boat, the Division determined that the purchase of one of the boats originally determined to be exempt, was taxable. The Tax Court held that the doctrine of apparent authority was inapplicable to agents of the state, and that the letter of the investigator, even if it constituted a contract, had no binding effect upon the Director, because such agreements are subject to the strict statutory provisions of N.J.S.A. 54:53-1 to -16, authorizing closing agreements *162 and compromises of tax liabilities. Black Whale, supra, 15 N.J. Tax at 352-53. See also GABGEO, Inc. v, Director, Div. of Taxation, 23 N.J. Tax 38, 53 (Tax 2006) (Director not estopped from assessing taxes against a bulk sale purchaser where the statutory requirements for the adoption of a closing or compromise agreement have not been met).
The applicable provisions here, where the assessment is fixed and final, are those dealing with compromises,[6] which are also applicable to any agreement to reduce the assessments of gross income withholding tax and litter tax, even though there is no statutory provision providing for the redetermination of those taxes on the Director’s own motion. N.J.S.A. 54:53-7(a) permits the Director to compromise any civil liability arising under the tax laws of the State only where there is doubt as to liability or doubt as to collectability. The compromise must be entered into prior to reference of the case to the Attorney General for defense. Ibid. “An offer in compromise shall be considered accepted only when the proponent thereof is so notified in writing.” N.J.S.A. 54:53-12. Significantly, for purposes of this action, the Director must obtain the opinion of the Attorney General before an offer in compromise may be accepted in any case involving unpaid tax of $5,000 or more. N.J.S.A. 54:53-14. None of the procedural requirements were met here. See, e.g., N.J.S.A. 54:53-10 (offers in compromise to be submitted on forms prescribed by the Di *163 rector accompanied by a payment in the amount of the compromise offer or a deposit if the offer provides for future installment payments).
It is worth noting that the statutory provisions for closing agreements and compromises require that some administrative action be taken before litigation commences. A closing agreement must be requested before a case contesting the liability is filed with the Tax Court, N.J.S.A. 54:53-5, and the Director may enter into a compromise agreement only before a case has been referred to the Attorney General for its defense. N.J.S.A. 54:53-7. That legislative policy denying a taxpayer administrative relief from an assessment at the same time it is litigating the same assessment in court is consistent with judicial decisions which similarly prohibit a taxpayer from maintaining the same action in two forums.
In Union City Assocs. v. City of Union City, 115 N.J. 17, 556 A.2d 769 (1989), for example, the taxpayer initially filed a complaint in the Tax Court and subsequently filed a petition with the Hudson County Board of Taxation, both challenging the 1983 local property tax assessment on the same real estate parcel. The appeals were both filed pursuant to N.J.S.A. 54:3-21, which permits a taxpayer to elect to file a direct appeal to this court in certain cases, or to file the appeal with the county board. The Court concluded that the Legislature intended to provide exclusive jurisdiction over the matter to the forum in which the taxpayer initially elects to file its appeal. Id. at 24, 556 A.2d 769. Subsequently, in Shav Assocs. v. Middletown Tp., 11 N.J.Tax 569 (Tax 1991), where the municipality filed a timely petition of appeal with the county tax board on the same day that the taxpayer filed a timely appeal with the Tax Court, this court held that the county board had no jurisdiction over the matter. Id. at 577. Based on the policy concerns voiced in Union City Associates, such as finality, prevention of needless litigation, and avoidance of duplication, among others, Judge Rimm reasoned that a timely and proper filing with the Tax Court vests jurisdiction to decide the matter in the Tax Court and must result in the county board of taxation being without jurisdiction to consider the matter. Id. at 575-76.
*164 If the Division employees present at the May 20, 2004 meeting purported to enter into an agreement to compromise the assessment based on the results of a re-audit, they had no authority to so do. Black Whale, supra, 15 N.J. Tax at 352. Although plaintiff denies that it is relying on principles of estoppel, such principles are inapplicable in tax matters because the Director cannot be bound by the unauthorized acts of his employees. Id. at 354-56. Moreover, the Attorney General plainly did not render an opinion as to a compromise, as required by N.J.S.A. 54:53-14. The Division was instead advised by the Attorney General’s office to cease all communications with the plaintiff because this action was pending. In any event, under the relevant statutory provisions, no compromise or closing agreement could be entered into after the complaint in this action had been filed. Accordingly, I conclude that there was no valid agreement to compromise plaintiffs assessment.
Plaintiff suggests that, if Division employees are prohibited from entering into the type of agreement that Ms. DiPasquale entered into here, it would inhibit settlement of cases and would be contrary to the policy of this State to encourage settlement rather than submission of disputes to the courts. I conclude that the statutory provisions for compromise agreements do not have such an effect. Prior to filing suit, plaintiff could have proposed a compromise agreement as indicated above, conditioned on the outcome of a re-audit. Alternatively, the parties can engage in settlement negotiations after litigation has commenced. In other actions contesting audit determinations, I have occasionally been informed by counsel that the Division has agreed to re-audit a taxpayer so that the parries have a basis for settlement discussions. Any agreement to re-audit, however, is entered into with the knowledge and consent of the deputy attorney general representing the Director in the litigation, and is understood by all to be an exploration of the settlement possibilities and not binding on either party.
Plaintiffs principal argument before this court is that the agreement must be enforced, because it would be unfair to the plaintiff to permit the Division to renege on its agreement because *165 the plaintiff spent additional time and money in reliance upon that agreement in getting its tax records in order for examination by the Division. Notably, N.J.S.A. 54:32B-16 requires persons responsible for collecting sales and use tax to maintain extensive records relating to purchases and sales, including sales slips, invoices, and receipts and to make them available for inspection at any time upon the Director’s demand. Plaintiff did no more than was required by statute.
Plaintiff nevertheless cites case law requiring taxing authorities to “turn square corners” in dealing with taxpayers. I conclude that this case is readily distinguishable from those relied on by the plaintiff. The New Jersey Supreme Court has described the square corners doctrine in local property tax matters as follows:
[Government] may not conduct itself so as to achieve or preserve any kind of bargaining or litigations] advantage over the property owner. Its primary obligation is to comport itself with compunction and integrity, and in doing so government may have to forego the freedom of action that private citizens may employ in dealing with one another.
Similarly, the statutory provisions governing substantive standards and procedures for taxation, including the administrative review1 process, are premised on the concept that, government will act scrupulously, correctly, efficiently, and honestly. It is to be assumed that the municipality will exercise its governmental responsibilities in the field of taxation conscientiously, in good faith and without ulterior motives. To that end, it is expected that it will make proper assessments, which are accorded a strong presumption favoring their validity. It follows that a municipality should undertake to appeal its own assessment only when it has good cause to believe the assessment does not reflect true value, and not simply to achieve a tactical advantage over, or even strategic parity, with a taxpayer that has independently appealed the assessment.
[F.M.C. Stores, supra 100 N.J. at 427, 495 A.2d 1813 (citations omitted).]
In F.M.C. Store,% the issue was whether a municipality would be permitted to maintain a local property tax appeal in the nature of a counterclaim where the municipality had filed its complaint beyond the statutory filing date. The Court held that a municipality could not file a late appeal, even when a taxpayer had filed its own appeal at the statutory deadline.[7] In moving to dismiss the *166 complaint here, the Director is not seeking an exception to a statutory deadline to press its own litigational advantage. He is instead asking this court to enforce the statutory deadline against the taxpayer.
Similarly, New Concepts for Living, Inc. v. City of Hackensack, 22 N.J. Tax 616, 376 N.J.Super. 394, 870 A.2d 697 (App.Div.2005), does not support plaintiffs argument. There, the Appellate Division reversed the decision of the Tax Court, which had dismissed the taxpayer’s complaints for untimely filing. The Appellate Division concluded that the taxpayer was entitled to relief where the municipality had sent assessment notices to an old address when the municipality was fully aware that the taxpayer had moved. Id. at 22 N.J. Tax at 626 and 376 N.J.Super. at 404, 870 A.2d 697. No such contention is made here. Mr. Jacoubs admittedly received the notice of assessment and ignored it until it was well past the statutory date for filing an appeal.
I conclude that the Division acted in accordance with the applicable statutory and decisional law in declining to hear plaintiffs untimely protest, as set forth in the Division’s letter of January 26, 2004. Accordingly, I have no jurisdiction to hear the merits of the complaint. That is not changed by any subsequent discussions between the parties after the filing of the complaint in this action. Although there is substantial disagreement as to the circumstances under which Ms. DiPasquale and plaintiff reached an agreement at the meeting of May 20, 2004, and what the terms of that agreement were, any such agreement was not binding on the Director because it was never memorialized in a closing or compromise agreement as required by the statutes enacted by the legislature.
For the foregoing reasons, the Director’s motion is granted and the complaint is dismissed. An order is enclosed.

A copy of the notice and demand letter was not supplied to the court in connection with the motion.

 The final determination letter that is contested here made no reference to the Director's finding that Mr. Jacoubs was a responsible person. At oral argument, *153 the Deputy Attorney General representing the Director indicated that no final determination fiad ever been issued with respect to that finding.

 Rule 4:4-4(a)(7) provides that a complaint is to be served on the Attorney General or on the Attorney General's designee named in a writing filed with the Clerk of the Superior Court. In this case, service was made on a deputy attorney general who is not a named designee.

 Plaintiff's attorney asserted in a brief that the Director wrote a letter dated April 15, 2004, to Mr. Jacoubs, suggesting that Mr, Jacoubs contact the Division to arrange for a follow-up meeting with Division officials. It is unknown what contact with the Division may have elicited that letter, which was not included in the motion papers. The letter is not material to this motion.

 In Portuguese Spanish Palace, supra, 20 N.J. Tax at 104-05, no timely protest was made on behalf of individual plaintiffs found by the Director to be personally responsible for taxes, and the complaint of the individuals was dismissed as untimely filed. In the present case, the December 1, 2003 letter protested the finding that Mr. Jacoubs was a responsible person, as well as protesting the underlying assessment against the plaintiff. Because the Director has yet to make a finding with respect to Mr. Jacoubs, the issue of whether or not that part of the protest was timely filed is not before the court.

 Closing agreements are not specifically defined, but are authorized “in any case in which there appears to be an advantage in having the case permanently and conclusively closed, or if good and sufficient reasons are shown by the taxpayer for desiring a closing agreement and it is determined by the director that the State will sustain no disadvantage through consummation of such an agreement." N.J.S.A. 54:53-1. Closing agreements have been used by the Director to resolve continuing issues, such as the agreement described in Boardwalk Regency Corp. v. Director, Div. of Taxation, 18 N.J. Tax 328, 331 (App.Div.1999). The closing agreement in issue set forth how beverages and food provided without charge by Atlantic City casinos to patrons were to be treated for sales and use tax purposes. See also New York Susquehanna & Western Railway Corp. v. Director, Div. of Taxation 22 N.J. Tax 501 (Tax 2005), appeal pending, Docket No. A2506-05T5 (App. Div. filed January 18, 2006), involving closing agreements setting the valuation of certain railroad property following a contentious reassessment.

 N.J.S.A. 54:3-21 has since been amended to permit a municipality to file a counterclaim within twenty days of service of the taxpayer's complaint, if the taxpayer's complaint is filed on or within twenty days of the statutory deadline. L. 1987, c. 185, § 1.