STATE OF NEW JERSEY AND COUNTY OF BERGEN, PLAINTIFFS, v. RICHARD C. LeVIEN, GUARDIAN OF GARDNER LeVIEN, A MENTAL INCOMPETENT, DEFENDANT.

Superior Court of New Jersey
Law Division

Decided December 13, 1963.

*Mr. Arthur J. Sills,* Attorney General of New Jersey, attorney for plaintiff State of New Jersey (*Mr. Eugene T. Urbaniak,* Deputy Attorney General, of counsel).

*Messrs. Winne & Banta,* attorneys for plaintiff, County of Bergen (*Mr. Horace F. Banta,* of counsel).

*Mr. George J. Kauper,* attorney for defendant (*Mr. Arthur Knasler,* of counsel).

G. H. BROWN, J. C. C. (temporarily assigned). By this action the State of New Jersey and the County of Bergen seek to recover from the estate of Gardner LeVien the sum of $24,992.09 as the actual per capita cost of maintaining him in the state hospitals at Greystone Park and Trenton since 1942 as a public charge. The estate funds are ample to pay the bill.

The following facts have been stipulated. LeVien was adjudged an insane person by the Bergen County Court of Common Pleas. He was consequently committed to Greystone Park by an order dated September 11, 1942. About a year later he choked two fellow patients to death. Under an order signed by the Commissioner of the Department of Institutions and Agencies on September 20, 1943 he was transferred to the State Hospital at Trenton to be held in special custody in a maximum security unit until restored to reason. He is still there in what is known as a "civil section." His current mental diagnosis is "schizophrenic reaction, paranoid type, with guarded prognosis."

This is a full statement of the legal process producing LeVien's confinement.

Plaintiffs rely upon *R. S.* 30:4–83 for validity of the transfer. The statute provides:

"Any inmate of any charitable, hospital, relief or training institution as classified in section 30:1–7 of this title may be transferred to any other charitable, hospital, relief or training institution, by order of the commissioner in accordance with the formally adopted rules of the state board either upon the initiative of the commissioner or upon the application of the chief executive officer."

In their claim for reimbursement, plaintiffs invoke the following further section of *Title* 30:

"Every patient supported in a state charitable institution shall be personally liable for his maintenance and for all necessary expenses incurred by the institution in his behalf * * *." (*N. J. S. A.* 30:4–66)

Defendant, Gardner LeVien's guardian, resists the claim on several grounds:

FIRST: The facts of the case preclude a finding that LeVien has the statutory status of a "patient supported in a State charitable institution" and that without this foundation the claim for reimbursement must fall.

SECOND: LeVien should be classified as "insane" within the criminal connotation of *R. S.* 30:4–78 so that in accordance with its provisions his maintenance will be at government expense.

THIRD: The State should not benefit from its wrongful failure to bring a timely indictment against him for the homicides.

FOURTH: He is to be treated as "indigent" because a 1947 court order, so declaring his status, subsists.

During his confinement at the Trenton State Hospital LeVien has been in a "charitable" institution as that term has long been understood in *Title* 30. The dichotomy presented in *R. S.* 30:1–7, at the time of the transfer, was between "charitable, hospital, relief and training institutions" on the one hand and "correctional institutions" on the other. The content of the latter category was particularized by *R. S.*

30:1-2 in the words "correctional, reformatory and penal institutions."

Both the "New Jersey state hospital at Greystone Park" and the "New Jersey state hospital at Trenton" were thusly denominated "charitable" institutions by the Legislature in *R. S.* 30:1-7. Defendant argues that this treatment of the term does not serve to elucidate it as used in *N. J. S. A.* 30:4-66. The Legislature in that instance, it is said, did not mean to comprehend the fact situation present here where a person is "forcibly confined."

Gardner LeVien was duly committed to Greystone by the 1942 order. It was a civil commitment after a finding of insanity in the sense of his being dangerous to himself and to others. It was directed that he be confined until restored to reason or until the further order of the court. Any attempt on his part to leave that place would have been met by force. In this respect he was "forcibly confined" in the admittedly "charitable" structure of that institution. His subsequent transfer to the Trenton hospital did not subject him to an atmosphere of any qualitative difference. He was simply in a place where the same restraint could be imposed more effectively. By stipulation, he was in a "civil section." He was not confined to Trenton for correction, reform or punishment. Absent these functions, an institutional environment is "charitable" because of the catalogue established by the Legislature in *R. S.* 30:1-7.

It is clear from *R. S.* 30:4-78 that if LeVien had institutional status as a "convict" or as one of the "criminal insane," his "maintenance and clothing" would be at public expense. Defendant, by his argument, seeks to show that the commission of the homicides automatically put LeVien into the class of the "criminal insane" for the purposes of the cited section of *Title* 30. There was no charge or adjudication of criminality in the killings by Gardner LeVien. Without such a prosecution or determination he cannot be said to be one of the "criminal insane," as that term must have been used in drafting the statute.

Defendant further contends that the omission of the State to initiate judicial proceedings by which the issue of criminality could be tested has deprived LeVien of constitutional due process. It is said that

"* * * if Gardner is ever cured, he must be returned to the County Prosecutor of the County where he killed the two persons and he must be indicted and tried."

The prejudice allegedly arises out of the difficulty of a future defense by reason of insanity or otherwise after the lapse of so many years.

There is in evidence a letter written by Frank C. Scerbo, Morris County Prosecutor, to Eugene T. Urbaniak, Deputy Attorney General, under date of November 16, 1962. It reports that LeVien's condition at the time of the killings was diagnosed as "dementia precox, paranoid type." The letter concludes as follows:

"Considering all the circumstances involved and that the subject was an insane inmate at the time of the commission of the crimes, it is not my intention to proceed in the matter in any way if it were later determined that he has regained his sanity."

Under all the circumstances there is no substance to the claim that LeVien has been disadvantaged by the lack of prosecution 20 years ago.

The real difficulty in defendant's case is that the prosecutor did not then invoke the provisions of *N. J. S.* 2A:163–2. If that had happened, as the defendant's brief points out, there could be no claim against the estate:

"* * * Gardner would have been proven to be insane at the time the crimes were committed; and * * * he would have been ordered into confinement in the New Jersey State Hospital at Trenton for the criminal insane, and * * * under that statute, the State and/or County would have maintained him * * *."

If LeVien had been found to be insane at the time of the homicides, after the statutory hearing, he would be precisely

where he now is. It could make no practical difference to this hapless man by what route he arrived at the Trenton institution. No difference, except that his property would be spared by one approach and not by the other. The public policy of requiring private support for state hospital maintenance of the insane, where feasible, has been solidly established by the Legislature and the courts. LeVien should not be supported by the public just because of such a collateral technicality.

█ The contention that the County of Bergen should pay for the maintenance because the Court of Common Pleas order of July 29, 1947 so provided is squarely met by the provisions of *R. S.* 30:4–74:

"A patient's estate or the person chargeable for his support, or the state or county as provided by law, shall be liable for institutional support from the time of the patient's commitment whether he was committed as indigent or nonindigent and irrespective of change of status after commitment."

There is no reason why the plaintiffs should not have judgment in the amount of $24,992.09 for reimbursement according to their respective contributions, together with costs and disbursements of this suit.