MENYUK, J.T.C.
This matter comes before the court on a motion made in lieu of answer pursuant to ll. 4:6—2(e), to dismiss the complaint for failure to state a claim upon which relief can be granted. The specific issue raised by the motion is whether a claim made pursuant to the New Jersey Consumer Fraud Act may be maintained against a vendor who is alleged to have collected more sales tax than is required by the Sales and Use Tax Act.
The complaint, filed as a class action, alleges that the plaintiff made several purchases from the defendant supermarkets during the period 2002 through 2005, and that defendants overcharged the amount of sales tax that was due on the purchases. The overcharges are said to have resulted from defendants’ computation of sales tax based on the regular price of the items purchased rather than on the reduced or discounted sale prices actually charged for the items, particularly in transactions where the plaintiff used store coupons or used a shopper’s club card issued by the supermarket. The complaint alleges violations of the Consumer Fraud Act, N.J.S.A. 56:8-1 to -20, and also alleges breach of fiduciary duty, common law fraud, and negligent taxation.
Defendants Wakefern Food Corporation (“Wakefern”), Shoprite Supermarkets, Inc. (“Shoprite”), and Foodarama Supermarkets, *42 Inc. (“Foodarama”),[1] move to dismiss the complaint on the ground that the plaintiffs exclusive remedy is to seek a refund of the overpaid tax from the Division, of Taxation as provided by the Sales and Use Tax Act, N.J.S.A. 54:32B-1 to -29, the State Uniform Tax Procedure Law, N.J.S.A. 54:48-1 to 54:53-18, and the regulations promulgated under those statutes. The defendants further contend that the Consumer Fraud Act remedy sought by the plaintiff directly conflicts with the design of the tax statutes enacted by the Legislature for the refund of overpaid sales tax and cannot be maintained as a matter of law. Defendants finally assert that because of the exclusive statutory scheme created by the Legislature for the refund of overpaid sales taxes, plaintiffs tort claims of fraud, breach of fiduciary duty and negligent taxation are also precluded and must be dismissed. For the following x’easons, the defendants’ motion is granted.
I. Procedural History
The complaint and the motion to dismiss were originally filed in the Law Division of the Superior Court of New Jersey, Middlesex County, and were subsequently transferred to the Tax Court by order entered October 27, 2006, because the complaint and the motion raise issues as to which expertise in matters involving taxation is desirable. See N.J.S.A. 2B:13-2(b) (setting forth the jurisdiction of the Tax Court over such matters); R. 4:3-4(a) (providing for transfer of actions from the Superior Court to the Tax Court).
The motion was originally brought as a motion to dismiss the complaint for failure to state a claim upon which relief can be granted. Defendants later filed the affidavits of corporate officers of defendants Wakefern, Shoprite, and Foodarama, each of whom had responsibility for the collection of sales tax and remittance of the tax to the State of New Jersey (the “State”). The substance *43 of the affidavits was that each of those defendants routinely remitted all sales tax collected in the normal course of operations to the State as required by statute and by regulations promulgated by the New Jersey Division of Taxation. Plaintiff did not submit any material in opposition, and at oral argument, plaintiffs counsel conceded that, for purposes of the motion, the facts set forth in the affidavits were true.
Rule 4:6-2 provides that when matters outside the pleadings are presented to and not excluded by the court, the motion is to be treated as one for summary judgment. The standard for decision, then, is that the court “must view the facts in the light most favorable to the party opposing the motion, and, if the competent evidential materials, when viewed in that light, present material issues of disputed fact, summary judgment must be denied.” Lederman v. Prudential Life Ins. Co. of Am. 385 N.J.Super. 324, 337, 897 A.2d 373 (App.Div.) (citing Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540, 666 A.2d 146 (1995)), certif. denied, 188 N.J. 353, 907 A.2d 1013 (2006). As the case is presented by the parties on this motion, there are no material issues of fact in dispute, and the only issues presented to the court for decision are issues of law. The matter is therefore ripe for summary judgment. R. 4:46-2(c).
II. The Statutory Provisions
The Consumer Fraud Act makes it an unlawful practice to use “any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise....” N.J.S.A 56:8-2. The Consumer Fraud Act not only protects consumers from “sharp” business practices and dealings, but also from unfair practices even when the merchant acts in good faith. Cox v. Sears Roebuck & Co., 138 N.J. 2, 15-16, 647 A.2d 454 (1994).
The Division of Taxation has promulgated a regulation concerning the taxability of purchases where the purchaser presents a *44 coupon entitling the purchaser to a discount. N.J.A.C. 18:24-1.4(f). The regulation provides that when the coupon is a “store” coupon for which the vendor receives no reimbursement from the manufacturer for the discount, the vendor collects tax from the customer on the discounted price of the item only, and not on the price without the discount. Ibid. In her complaint, plaintiff also cites a publication of the Division of Taxation, Publication ANJ-9, entitled “Coupons, Discounts & New Jersey Sales Tax,”[2] which provides:
Whenever a taxable item is purchased “on sale” and no coupon is required for the discount, sales tax is due only on the discounted price____
When a store or manufacturer offers a taxable item free with no coupon required, sales tax should not be charged on the free item____
Often, supermarkets issue customers a store card which can be used to obtain discounts on certain items. Discounts obtained through such cards are treated the same as discounts with store coupons. Thus, sales tax is due on the discounted amount.
[ANJ-9 at 1 (rev. 9/06) (emphasis added).]
Most of the transactions set forth in the complaint involve tax charged on the full price of items purchased at a discount through the use of a store card. In at least one instance, plaintiff availed herself of a store policy that guaranteed the accuracy of its optical price scanners by giving a customer a free item if it scanned higher than the shelf unit price label. Although plaintiff received the free item, she alleges that she was still charged tax on that item. Plaintiff further alleges that she was advised by an unidentified Shoprite representative that the policy is not to give tax back. Plaintiff also alleges instances where a coupon for a taxable item would not scan and when entered manually by the cashier, the tax over and above the tax on the discounted price was not deducted. The specific incidents cited in plaintiffs complaint occurred between February 8, 2002 and February 18, 2005.
*45 The plaintiff alleges that defendants’ overcharging of sales tax constitutes an unconscionable commercial practice, deception, fraud, or misrepresentation, and/or the concealment, suppression or omission of material facts with the intention that plaintiff and other similarly situated persons rely upon the concealment or omission in purchasing merchandise from the defendants, all in violation of N.J.S.A. 56:8-2. It is further alleged that defendants knowingly misrepresented the facts to obtain the additional tax from the plaintiff, so that defendants could invest such monies until the tax was remitted to the State.
Defendants do not concede that they collected excess taxes, but for purposes of the motion, accept the allegations as true. Defendants contend, however, that plaintiffs claims amount to a claim for refund of taxes and that the Legislature has created an exclusive remedy for such claims, which is a refund claim made to the Division of Taxation. Defendants further contend that there is a direct and unavoidable conflict between the Sales and Use Tax Act and the Consumer Fraud Act that precludes plaintiffs claims under the Consumer Fraud Act.
Both the Sales and Use Tax Act and the State Uniform Tax Procedure Law have refund provisions. See N.J.S.A. 54:32B-20 (Sales and Use Tax Act); N.J.S.A 54:49-14 (State Uniform Tax Procedure Law). The Sales and Use Tax Act further provides that sales and use taxes are to be governed by the provisions of the State Tax Uniform Procedure Law, except to the extent that a provision of the Sales and Use Tax Act conflicts with the State Tax Uniform Procedure Law. N.J.S.A. 54:32B-28.[3] The two refund provisions do not directly conflict in that each provides a four-year statute of limitations for refund claims, but the refund provision of the Sales and Use Tax Act is specifically tailored to the design of that act, where the taxpayer generally does not pay sales tax directly to the State. Rather, the sales tax is collected from taxpayers by “persons required to collect tax,” a term *46 defined by N.J.S.A. 54:32B-2(w) to include sellers such as Shoprite. The defendants contend that N.J.S.A. 54:32B-20(a) provides the exclusive remedy for the refund of overpaid tax:
In the manner provided in this section the director shall refund, or credit any tax, penalty or interest erroneously, illegally or unconstitutionally collected or paid if application to the director for such refund shall be made within four years from the payment thereof. Such application may be made by a customer who has actually paid the tax. Such application may also be made by a person required to collect the tax, who has collected and paid over such tax to the director, provided that the application is made within four years of the payment to him by the customer, but no actual refund of moneys shall be made to such person until the person shall first establish to the satisfaction of the director, under such regulations as the director may prescribe, that the person has repaid to the customer the amount for which the application for refund is made. The director may, in lieu of any refund, allow credit on payments due from the applicant.
[N.J.S.A 54:32B-20(a) ].
The Director, Division of Taxation (“Director”) has promulgated regulations specifically pertaining to refund claims, N.J.A.C. 18:2-5.1 to -5.9. N.J.A.C. 18:2-5.8(d) sets forth the procedure for filing a refund claim with the Director after a sales and use tax return has been filed and a person required to collect the tax has remitted the tax to the Director. The regulation provides:[4]
1. Business refunds: If the person required to collect the tax overpaid sales tax on the Monthly Remittance (Form ST-51), the adjustment should be made on the Sales and Use Tax-Quarterly Return (Form ST-50). If the person required to collect the tax failed to adjust the quarterly return, a Claim for Refund (Form A-3730) and a New Jersey Sales Tax Amended Return (Form ST-607-A) should be completed for the appropriate tax period(s).
2. Individual refunds: If the taxpayer overpaid sales tax when making a retail purchase, the taxpayer may request a refund directly from the vendor from whom the purchase was made. However, if the vendor has already submitted the tax to the State, the taxpayer must complete a Claim for Refund (Farm A-3730) and include supporting documents to substantiate the claim.
[N.J.A.C. 18:2-5.8(d) (emphasis added) ].
Under the provisions of the Sales and Use Tax Act, sellers such as. defendants are required to file monthly returns, N.J.S.A. 54:32B-17(a), and, “at the time of filing such return, pay to the *47 director the taxes imposed by this act as well as all other moneys collected by such person acting or purporting to act under the provisions of this act.” N.J.S.A. 54:32B-18. In contending that plaintiffs exclusive remedy was a refund claim made to the Director pursuant to N.J.S.A. 54:32B-20(a) and N.J.A.C. 18:2— 5.8(d) where the defendants had already filed returns and paid the tax collected from the plaintiff to the Director, defendants rely upon the design of the Sales and Use Tax Act, under which defendants have no right to sales tax monies that have been collected and remitted to the Director. Sales tax is paid to the seller who is required to collect it as a trustee for and on account of the State. N.J.S.A. 54:32B-12(a). Defendants argue that plaintiffs attempt to obtain a refund of overpaid taxes from them after they have remitted those taxes to the State “is misguided and legally untenable.”
The plain words of N.J.S.A. 54:32B-20(a) (“Section 20(a)”) do not appear to require the result argued for by the defendants. On its face, Section 20(a) deals only with the obligation of the Director to refund overpaid tax either to customers or persons required to collect the tax. A refund claimant may, but is not obliged to, apply to the Director for a refund. The paragraph is silent as to the obligations of a vendor to its customer. Similarly, the defendants’ reliance on Continental Trailways, Inc. v. Director, Div. of Motor Vehicles, 102 N.J. 526, 548, 509 A.2d 769 (1986) for the proposition that, “in the absence of statutory authority, taxes voluntarily, although erroneously, paid even under an unconstitutional statute cannot be refunded,” is misplaced, because that and similar judicial pronouncements regarding the requirement of strict adherence to statutory requirements for refunds, see, e.g., Great Adventure, Inc. v. Director, Div. of Taxation, 9 N.J.Tax 480, 484-85 (Tax 1988), are concerned with the “exigencies of taxation and the administration of government.” Id. at 485. In other words, those considerations are compelling when a customer or vendor is seeking a refund directly from the Director. That rationale is not directly pertinent when a taxpayer is seeking the return of overpaid tax monies from a person who overcharged the tax and then turned the money over to the Director. There is no *48 public policy that would prohibit a vendor from voluntarily refunding excess taxes it had erroneously or fraudulently collected. For the sake of customer relations, a vendor may very well determine to refund a few pennies of erroneously collected sales tax, even after the vendor has remitted the tax to the State.
It is plaintiffs position that she is not requesting a refund, but a reimbursement by defendants for wrongly collected taxes. In the words of the brief filed on her behalf, “she does not give a hoot whether these taxes were paid over to the Division of Taxation.” Presumably, the Consumer Fraud Act’s provision permitting the award of treble damages and the award of reasonable attorneys’ fees, N.J.S.A. 56:8-19, makes the Consumer Fraud Act a more attractive option for the plaintiffs redress of her grievances than Section 20(a), under which the remedy is simply the refund of overpaid taxes and, in some circumstances, interest. See N.J.S.A. 54:49-15.1. Further, the State Uniform Tax Procedure Law plainly bars refund claims for taxes overpaid to the State on behalf of a class. N.J.S.A. 54:49-14(c).
Defendants place great weight on a 2004 unpublished decision of the Appellate Division, where the court affirmed the dismissal of a class action complaint against a rental car company that collected sales tax on what were alleged to be nontaxable insurance options purchased by the plaintiff at the time she rented an automobile from the defendant. The Appellate Division found that the claim amounted to a claim for a refund of sales taxes and that it ran counter to N.J.S.A. 54:32B-20(a). The court noted the existence of the Director's regulation, N.J.A.C. 18:2-5.8(d)(2), which provides in relevant part that, “if the vendor has already submitted the tax to the State, the taxpayer must complete a Claim for Refund,” and concluded that it was unlikely that the Legislature intended to create a second and parallel cause of action under the Consumer Fraud Act. The court found that the design of the Sales and Use Tax Act, which included provisions for the imposition of tax, requirements for its collection, a specific provision related to refunds, and an appeals procedure to the Tax Court, compelled the conclusion that the Legislature intended that the Sales and Use Tax Act was to be the exclusive remedy for refunds of *49 overpaid sales tax. There is no published opinion on the issue of whether a customer may maintain a cause of action under the Consumer Fraud Act against a vendor who has collected excess sales and use taxes.
III. Does the Remedy Provided by the Consumer Fraud Act Directly Conflict with the Sales and Use Tax Act and the State Uniform Tax Procedure Law?
The Consumer Fraud Act is remedial in nature, and is to be “construed liberally in favor of consumers.” Cox v. Sears Roebuck & Co., 138 N.J. 2, 15, 647 A.2d 454 (1994). “The language of the CFA evinces a clear legislative intent that its provisions be applied broadly in order to accomplish its remedial purpose, namely, to root out consumer fraud.” Lemelledo v. Beneficial Mgmt. Corp., 150 N.J. 255, 264, 696 A.2d 546 (1997).
The breadth of the act has, however, been limited by our courts in certain circumstances. In Daaleman v. Elizabethtown Gas Co., 77 N.J. 267, 273, 390 A.2d 566 (1978), the Supreme Court of New Jersey declined to extend the applicability of the Consumer Fraud Act to a claim that a public utility had fraudulently manipulated charges imposed under its filed tariff to overstate the actual cost and quantity of gas purchased. The Court noted that the gas utility operated under the jurisdiction of the Board of Public Utility Commissioners (“PUC”). Id. at 270, 390 A.2d 566. It was subject to the provisions of the Public Utilities Act and regulations promulgated by the PUC. Ibid. Further, application of the clause in issue involved interpretation of PUC administrative orders and regulations, and its use was subject to PUC supervision and control. Id. at 271, 390 A.2d 566. The Court concluded that the claims sought to be brought pursuant to the Consumer Fraud Act and the remedies for the alleged overcharges were exclusively within the jurisdiction of the PUC. Id. at 271, 390 A.2d 566. The Court further noted that if it were held that the Consumer Fraud Act was also applicable, “a situation would be presented where separate state agencies would have the right to exercise concurrent jurisdiction and control over Elizabethtown’s billings, with a real possibility of conflicting determinations, rulings and regula *50 tions affecting the identical subject matter.” Id. at 272, 390 A.2d 566.
More recently, however, our courts have been more reluctant to deprive plaintiffs of a remedy under the Consumer Fraud Act on the basis that there is a conflict with another regulatory scheme. In Lemelledo, the Supreme Court explained that:
- Daaleman, however, does not stand for the bright-line proposition that a regulated practice is automatically covered by the CFA or automatically exempt from it based solely on the number of administrative agencies having regulatory jurisdiction over the practice____Instead, a court must look to whether a ‘real possibility" of conflict would exist if the CFA were to apply to a particular practice, regardless of the number of agencies with regulatory jurisdiction over that practice.
[Lemelledo, supra, 150 N.J. at 267-68, (196 A.2d 546.]
Lemelledo involved allegations that a lender engaged in “loan packing” by packaging credit insurance into a consumer loan made to the plaintiff. The Court rejected the lender’s contention that application of the Consumer Fraud Act conflicted with other statutes regulating insurance, ■ finding that the purpose of those statutes complemented rather than conflicted with the Consumer Fraud Act. The Court held that there was a presumption that the Consumer Fraud Act applied to -an activity covered by that act. Id. at 270, 696 A.2d 546.
In order to overcome the presumption that the CFA [Consumer Fraud Act] applies to a covered activity, a court must be satisfied, as this Court was in Daaleman, that a direct and unavoidable conflict exists between application of the CFA and application of the other regulatory scheme or schemes. It must be convinced that the other source or sources of regulation deal specifically, concretely, and pervasively with the particular activity, implying a legislative intent not to subject parlies to multiple regulations that, as applied, will work at cross-purposes. Ulnd.]
The Court concluded that agencies with overlapping jurisdiction “must harmonize the exercise of their jurisdiction” so that their common goals would be advanced. Id. at 273, 696 A.2d 546.
Similarly, in Smerling v. Harrah’s Entertainment, Inc., 389 N.J.Super. 181, 184, 912 A.2d 168 (App.Div.2006), the plaintiffs alleged that they had been induced to visit an Atlantic City casino by two advertised promotional schemes that were never made available to them. Some of the claims were based on alleged violations of regulations promulgated under both the Consumer *51 Fraud Act and the Casino Control Act. In reaching the conclusion that the consumer fraud claims were not preempted by the Casino Control Act, the court in Smerling distinguished between the exclusive jurisdiction of an administrative agency and the primary jurisdiction of such an agency. Exclusive jurisdiction is created when “the Legislature has vested exclusive jurisdiction with an agency, which preempts a court’s original jurisdiction over the subject matter.” Id. at 187, 912 A2d 168.
The Legislature “may vest an administrative agency with exclusive primary jurisdiction over common-law claims,” but only if it does so expressly, and by “explicitly” granting that agency the power to “award damages in private matters.” “As a general rule, jurisdiction of an administrative agency may be said to be exclusive when the remedy which the agency is empowered to grant is the only available remedy for the given situation.”
Under the doctrine of primary jurisdiction, on the other hand, “the case is properly before the court, but agency expertise is required to resolve the questions presented....”
[Ibid, (citations omitted).]
The court concluded that there was no conflict with respect to the advertising activities at issue in the case because there was nothing particularly sophisticated or technical implicated in the promotional schemes that would require the expertise of the Casino Control Commission. Id. at 192-93, 912 A2d 168. The Commission “has no special preemptive competence to judge the fairness of these ads ... [I]t is well within the conventional experience of courts to address consumer fraud issues.” Id. at 193, 912 A2d 168.
Based on the test set down in Lemelledo, supra, 150 N.J. at 270, 696 A 2d 546, for overcoming the presumption that the Consumer Fraud Act is applicable to an otherwise covered activity, and as that test was applied in Smerling, I conclude that the Division of Taxation has exclusive jurisdiction in the first instance to determine whether a transaction is taxable or not taxable, to determine the price on which the tax is calculated, to determine the correct amount of the tax, and if tax has been overpaid and remitted to the Dii'ector, to x-efund the tax pursuant to N.J.S.A. 54:32B-20(a). Under the facts of this case, there is thei-efox’e a direct and unavoidable conflict between the provisions of the Sales and Use Tax Act and application of the Consumer Fraud Act.
*52 “ ‘The taxing power lies at the heart of government. Without taxes government could not function. Any impairment of the taxing power affects the life-blood of government.’ ” Township of Holmdel v. N.J. Highway Auth., 190 N.J. 74, 88, 918 A.2d 603 (2007) (quoting N.J. Turnpike Auth. v. Washington Twp., 16 N.J. 38, 44, 106 A.2d 4 (1954)).
In enacting the Sales and Use Tax Act, the Legislature delegated to the Director both general and specific powers intended to effectuate the administration and collection of the sales tax, which is a significant source of State tax revenue. The Sales and Use Tax Act, together with the regulations promulgated by the Director pursuant to the authority granted her by the act, “deal specifically, concretely, and pervasively with” the activity of collecting and refunding sales tax monies and imply “a legislative intent not to subject parties to multiple regulations that, as applied, will work at cross purposes.” Lemelledo, supra, 150 N.J. at 270, 696 A.2d 546.
Among the general powers of the Director is the authority “[t]o prescribe methods for determining the amount of reeeipt[s], amusement charges, or rents and for determining which of them are taxable and which are nontaxable.” N.J.S.A. 54:32B-24(4). The Director is also authorized to require persons required to collect the tax to maintain records showing facts relevant in determining the amount of tax due and to furnish such information at the request of the Director. N.J.S.A. 54:32B-24(5). The Director is further authorized “[t]o assess, determine, revise and readjust the taxes imposed by” the Sales and Use Tax Act. N.J.S.A. 54:32B-24(6).
In order to properly administer the Sales and Use Tax Act and to prevent evasion of the tax imposed by that act, the receipts from sales of tangible personal property are presumptively taxable, “and the burden of proving that any such receipt ... is not taxable hereunder shall be upon the person required to collect tax or the customer.” N.J.S.A. 54:32B-12(b). In other words, where there is doubt, the vendor is required to collect tax from the customer. A person required to collect a tax imposed by the Sales *53 and Use Tax Act collects it as trustee for and on account of the State, N.J.S.A. 54:32B-12(a), and is personally liable for the tax imposed, collected, or required to be collected. N.J.S.A. 54:32B-14(a).
Moreover, the Sales and Use Tax Act explicitly recognizes that vendors and other persons required to collect the tax and file returns may intentionally or negligently collect monies that are not actually due under its provisions, and requires those persons to turn over all such monies to the Director. N.J.S.A. 54:32B-18. The statute provides in relevant part:
Every person required to file a return under this act shall, at the time of filing such return, pay to the director the taxes imposed by this act as well as all other moneys collected by such person acting or purporting to act tinder the ptovisious of this act. All the taxes for the period for which a return is required to be filed or for such lesser interval as shall have been designated by the director, shall be due and payable to the director on the dale limited for the filing of the return for such period, or on the date limited for such lesser interval as the director has designated, without regard to whether a return is filed or whether the return which is filed correctly shoivs the amount of receipts, amusement charges or rents or the value of property or services sold or purchased on the taxes due thereon.
IN.J.S.A. 54:32b—18 (emphasis added) ].
In sum, the design of the Sales and Use Tax Act is for vendors to collect the tax even where there is some doubt as to taxability, and for vendors, acting as trustees of the State, to remit all monies collected under authority of the statute, whether correctly or incorrectly, intentionally or negligently, to the State. Moreover, whenever any person required to collect tax fails to pay over any tax as required by the act, the Director may request the Attorney General to bring an action to enforce the payment on behalf of the State. N.J.S.A 54:32B-22(a).
The Director has the exclusive authority to prescribe the methods for determining the amount of the receipts “and for determining which of them are taxable and which are nontaxable,” and to assess and determine the amount of tax due. N.J.S.A. 54:32B-24(4) and (6). “LA]ny decision, order, finding, assessment, or action of the Director” may be appealed to the Tax Court in accordance with the provisions of the State Uniform Tax Procedure Law. N.J.S.A. 54:32B-21.
*54 Read in conjunction with these provisions, I conclude that the Legislature intended the refund remedy provided by N.J.S.A. 54:32B-20(a) to be the exclusive remedy for the refund of overpaid sales tax after that money has been remitted to the State. Our Supreme Court has held, that:
[A] legislative provision should not be read in isolation or in a way which sacrifices what appears to be the scheme of the statute as a whole. Rather a statute is to be interpreted in an integrated way without undue emphasis on any particular word or phrase and, if possible, in a manner which harmonizes all of its parts so as to do justice to its overall meaning.
[Koch v. Director, Div. of Taxation, 157 N.J. 1, 7, 722 A.2d 918 (1999) (quoting Zimmerman v. Municipal Clerk of Tp. of Berkeley, 201 N.J.Super. 363, 368, 493 A.2d 62 (App.Div.1985)).]
I therefore conclude that there is a direct and unavoidable conflict between the Sales and Use Tax Act and application of the Consumer Fraud Act to the facts of this case. The Director is given the exclusive initial jurisdiction to determine whether tax is due and judicial review is available only after she has made a determination or taken some other action with respect to a claim for refund of taxes that have already been remitted to the Director. By requiring that moneys collected by persons collecting tax under the act and by those “purporting to act under the provisions” of the act are to be paid over to the Director, N.J.S.A. 54:32B-18 makes clear that defendants had the obligation to pay over any overpaid tax monies to the Director with their returns. The Director is then authorized to determine the amount of tax due, N.J.S.A. 54:32B-19, and upon proper application, refund any tax erroneously, illegally or unconstitutionally collected. N.J.S.A. 54:32B-20(a).
Because plaintiff has conceded for purposes of this motion that the defendants have paid over all tax monies to the Director, and the facts of this ease do not therefore require me to reach the issue, I do not decide whether a cause of action pursuant to the Consumer Fraud Act is available when a vendor has collected taxes that exceed the amount due under the Sales and Use Tax Act, and has failed to turn over those taxes to the Director. The Director has the exclusive jurisdiction to make the initial determination whether and how much tax is due on any particular sales *55 transaction, but if excess tax has not actually been collected by the Director, the need to limit a purchaser’s remedy to N.J.S.A. 54:32B-20(a) is not as clear.
IV. Is the Conclusion that the Legislature Intended N.J.S.A. 54:32B-20(a) to be the Exclusive Remedy Available to Customers for the Refund of Overpaid Sales Taxes Still Valid Following the Enactment of L. 2005, c. 126, § 32?
In their briefs and at oral argument, the parties focused on: (1) whether N.J.S.A. 54:32B-20(a) and N.J.A.C. 18:2-o.8(d) provided the exclusive remedy available to a purchaser who had overpaid sales tax, and (2) if not, whether the Sales and Use Tax Act and the State Tax Uniform Procedure Law presented a direct conflict with the Consumer Fraud Act under the facts of this case, thereby precluding a cause of action under the Consumer Fraud Act. Except for a brief mention in a footnote of defendants’ reply brief, neither party had considered N.J.S.A. 54:32B-20(c), which was added to N.J.S.A. 54:32B-20 by L. 2005, c. 126, § 32, effective October 1, 2005. L. 2005, c. 126, § 38. N.J.S.A. 54:32B-20(c) (“Section 20(c)”) which provides:
(1) A purchaser may seek a refund of over-collected sales or use tax from the seller. This refund procedure shall provide the first course of remedy available to a purchaser seeking such a refund. A cause of action seeking a return of over-collected sales or use taxes from the seller shall not accrue until the purchaser has provided written notice to a seller and the seller has had sixty days to respond. Such notice shall contain the information necessary to determine the validity of the request.
(2) In connection with a purchaser’s request from a seller of over-collected sales or use tax, the seller shall be presumed to have a reasonable business practice, if in the collection of such sales or use taxes, the seller:
(i) uses either a provider or a system including a proprietary system, certified by the State; and
(ii) has remitted to the State all taxes collected less any deductions, credits, or collection allowances.
[N.J.S.A. 54:32B-20(c) 1.
Following oral argument, the court asked the parties to brief the following questions:
1. Was plaintiff required to give written notice to defendants as set forth in N.J.S.A. 54:32B-20(c)(l)?
*56 2. If the answer to the foregoing question is yes, must the complaint be amended to allege that the notice requirements of N.J.S.A 54:32B-20(c)(l) have been met?
3. If such written notice has not been given, should the complaint be dismissed?
4. Does the enactment of N.J.S.A. 54:32B-20(c) affect the analysis by the Appellate Division in its unpublished decision determining that N.J.S.A. 54:32B-20(a) was the exclusive remedy for refund of overpaid sales lax, and if so, how?
In light of my determination that N.J.S.A 54:32B-20(a) provides plaintiffs exclusive remedy for excess taxes collected by a vendor where the excess taxes have been remitted to the Director, the notice provisions are irrelevant here unless Section 20(c) created one or more additional non-exclusive causes of action. It is plaintiffs position that she' was not required to comply with the notice provisions of Section 20(c) because the statute should not be applied retroactively. She further contends that the new section makes clear that the customer’s first recourse for the return of overpaid sales tax is always the seller, whether or not the tax has been remitted by the seller to the Director.
Not surprisingly, defendants assert that the notice provisions of Section 20(e) are applicable here and that plaintiff cannot maintain a cause of action without the requisite notice. They also contend that, while Section 20(c) imposes additional procedural requirements on customers seeking a refund of overpaid sales taxes, it was not intended to expand the existing remedies available to customers, and that once sales tax has been paid over to the Director by the seller, N.J.S.A. 54:32B-20(a) and the Director’s regulation, N.J.A.C. 18:2-5.8(d), provide the exclusive remedy available to the plaintiff.
L. 2005, c. 126 enacted several amendments to the Sales and Use Tax Act that were intended to conform New Jersey’s sales and use tax to the requirements of the Streamlined Sales and Use Tax Agreement (“SSUTA”),[5] which is a multi-state project intended to simplify the administration of sales and use taxes. See Assembly Budget Committee, Statement to Assembly Committee *57 Substitute for A. 3473 (June 29, 2005); .see also N.J.S.A. 54:32B-44 to -53, the Uniform Sales and Use Tax Administration Act (authorizing the State Treasurer to enter into the SSUTA).[6] One of the goals of the legislation is to encourage sellers who do not have a physical presence in a particular state (such as mail order and internet vendors) to nevertheless collect sales and use taxes from their customers. See Assembly Budget Committee, Statement to Assembly Committee Substitute for A. 3473 (June 29, 2005). Among other things, SSUTA provides for the certification of third-party tax collection agents who will assume a vendor’s sales tax collection obligations and also provides for the certification of tax collection software. It is these mechanisms for the computation of tax that are referred to in N.J.S.A. 54:32B-20(c)(2)(i). Two leading commentators on the SSUTA have described the provisions of the SSUTA that are incorporated in Section 20(c) as follows:
SSUTA is generally silent on tax refund procedures, but it does require member states whose laws allow consumers to seek tax refunds from sellers to adopt two seller-protection provisions. First, a purchaser’s cause of action shall not accrue until a purchaser has provided written notice to a seller and the seller has had sixty days in which to respond. Second, Model 1, 2, or 3 sellers [7] are presumed to have a reasonable tax collection business practice, provided that they have remitted all taxes collected less any allowable deductions, credits, or collection allowances.
These provisions were sought by businesses concerned about, class-action lawsuits for the overcollection of tux. Although overcollected taxes are usually refundable by the stale to either the consumer or the seller, in some instances there are statutes of limitations or other procedural or practical barriers that leave the seller exposed. The SSUTA refund provisions do not insulate sellers from overcollection liability to third parties, but they do impose a presumptive standard for reasonable collection practices and require purchasers to attempt first to resolve refund disputes short of litigation.
*58 [Walter Hellerstein and John A. Swain, Streamlined Saks and Use Tax, H 7.09 (2007/2008 ed.) (emphasis added).]
There is no evidence that with the enactment of L. 2005, c. 126, the Legislature intended to create or permit a common law cause of action or an action under the Consumer Fraud Act where tax has already been paid over to the Director. The legislative history indicates that the Legislature intended only to conform the New Jersey Sales and Use Tax Act to the provisions of the SSUTA, and is lacks any discussion regarding consumer remedies or refund provisions. See, e.g., Statement, A. No. 3473 (November 4, 2004); Assembly Budget Committee, Statement to Assembly Committee Substitute for A. No. 3473 (June 29, 2005). Moreover, none of the other provisions of the Sales and Use Tax Act evidencing that N.J.S.A. 54:32B-20(a) was intended to be the exclusive remedy for the return of overpaid sales tax that has been remitted to the State were changed by L. 2005, c. 126. I conclude that Section 20(c) was intended only to add a provision requiring written notice to a seller in connection with the only refund claim that can be made against a seller under existing law, that is, where a refund is claimed prior to the seller’s report to and remittance of the tax to the Director.
V. Because N.J.S.A. 54:32B-20(a) is the Exclusive Remedy for a Return of Overpaid Taxes, the Complaint’s Remaining Claims Also Fail to State a Cause of Action.
The remaining counts of plaintiffs complaint allege that (1) the defendants were trustees charged with a duty to properly collect sales tax, and owed plaintiff a fiduciary duty to charge the proper amount of sales tax; (2) that defendants’ representation that they were charging the correct amount of tax with the intent that plaintiff would rely on that representation amounted to fraud; and (3) that defendants’ acts constituted negligent taxation and were a direct and proximate cause of plaintiffs loss. Because of my conclusion that the Legislature intended N.J.S.A. 54:32B-20(a) to be plaintiffs exclusive remedy for the return of overpaid taxes that have been remitted by the vendor to the Director, these counts fail to state a claim upon which relief can be granted.
*59 I note additionally that there is nothing in the Sales and Use Tax Act that creates a fiduciary duty on the part of the vendor for the benefit of the customer. The vendor is a trustee, but only for and on account of the State. N.J.S.A. 54:32B-12(a). Every person required to collect sales tax must register with the Director, thereby submitting itself to the Director’s regulatory authority. N.J.S.A. 54:32B-15(a). Further, the provisions of the Sales and Use Tax Act, particularly N.J.S.A. 54:32B-18, requiring the payment to the Director of monies collected by persons purporting to act under the provisions of the act, and N.J.S.A. 54:32B-19 and -24(6), vesting in the Director the exclusive initial jurisdiction to determine and assess the amount of tax due, evidence that the remedy provided by N.J.S.A 54:32B-20(a) was intended to apply when the tax is fraudulently or negligently collected and then remitted to the State.
For the foregoing reasons, the defendants’ motion is granted.

 Wakefern is alleged to be a cooperative of supermarket owners using the name "Shoprite," and is alleged to provide various services to cooperative members. In addition to the defendants bringing this motion, the complaint names several other corporations that are said to trade as Shoprite Supermarkets in various locations throughout New Jersey.

 The most recent revision of this publication dated "9/06" will be the one referred to here. The publication is available on the website of the Division of Taxation. Plaintiff's complaint does not indicate the date of the publication she relies upon, but the excerpts set forth in the complaint appear to be the same as contained in the 9/06 revision.

 The Sales and Use Tax Act refers to the State Uniform Tax Procedure Law by its former name. See L. 1999, e. 208 § 12, changing the name from the State Tax Uniform Procedure Law to the State Uniform Tax Procedure Law.

 Subsequent to the filing of the complaint in this action, N.J.A.C. 18:2-5.8(d) was amended effective December 17, 2007 to add additional provisions regarding the type and form of documentation needed to substantiate a refund claim. See 39 NJ.R. 3728(a) (Sept. 4, 2007); 39 N.J.R. 5368(a) (Dec. 17, 2007). The portion of the regulation quoted here remains the same.

 The provisions of ihe SSUTA can be found at Waller Hellerstein and John A. Swam, Streamlined Sales and Use Tax app. A (2007/2008 ed.), and at httpiwww. streamlinedsalestax.org/agreemenl.htm.

 New Jersey became a member of the Governing Body of the SSUTA on the Governing Body's effective date of October 1, 2005. See Walter Hellerstein and John A. Swain, Streamlined Sales and Use Tax, supra, at 11 2.05. The Governing Body, in general, is comprised of states whose sales tax rules are in compliance with SSUTA requirements. Ibid.

 Model 1, 2, and 3 sellers are described at N.J.S.A. 54:32B-53 a, b, and c, respectively, and include sellers who use certified collection agents or a certified software for the calculation of tax, and certain proprietary tax calculation software.