ANDREW, J.T.C.
This is a state tax case involving claims for refund of sales tax erroneously collected and paid pursuant to the Sales and Use Tax Act, N.J.S.A. 54:32B-1 et seq. Plaintiff, Great Adventure, Inc. filed refund applications with the Division of Taxation on December 29, 1984 claiming that it was entitled to a refund in the amount of $103,428.08 for 1981, $102,974.54 for 1982, $177,277.80 for 1983, and $155,866.96 for 1984 or a total of $538,547.38 for sales tax it had remitted to the Division on the face value of discount coupons. On June 27, 1985, the Director of the Division of Taxation denied plaintiffs refund claims and in a final determination letter dated March 11, 1986 the Director confirmed his denial of plaintiffs refund applications. Thereafter, plaintiff filed a complaint with this court seeking review of the Director’s final determination.
The parties have submitted this matter for the court’s consideration on stipulated facts which follow.
1. Great Adventure, Inc. (“Great Adventure”) has its principal office in Jackson Township, New Jersey, where it operates a theme park and a drive-thru safari.
*482 2. Great Adventure sells daily tickets charging a separate admission price for the park, for the safari, and for a combination of both. It also sells season passes.
3. Great Adventure offers a reduction from the price of its tickets by issuing discount coupons, which are distributed through various sources. There is no requirement that patrons must supply addresses and/or telephone numbers to Great Adventure in order to redeem discount coupons, nor is there any space provided on the coupons for the addresses and/or telephone numbers of patrons using these discount coupons.
4. Great Adventure’s discount coupons are “nonreimbursable” in that Great Adventure receives no remuneration for the value of the coupons from a third party.
5. In response to an inquiry from Great Adventure, the Director of the New Jersey Division of Taxation (the “Director”) ruled that the value of the discount coupons was subject to New Jersey sales tax in letters from the Director dated April 6 and April 18, 1979 ...
6. Great Adventure complied with the Director’s position in regard to the taxability of the discount coupons for the years 1981-1984____
7. Great Adventure calculated sales tax by first deciding the total ticket price it would charge for admission to the park and safari. For example, in 1984 Great Adventure determined from a business prospective that it could charge a total of $15.85, including sales tax, for admission to the park and safari and attract the number of patrons it required for the venture to be profitable. Great Adventure therefore collected a total of $15.85, which included $14.95 admission charge plus .90 cents sales tax. If a patron brought a $2.00 [discount] coupon to the park, the patron would pay a total of $13.85, which included $14.95 admission charge plus .90 cents sales tax minus a $2.00 discount for the coupon ...
8. Sales tax was remitted by Great Adventure to the Division of Taxation for the years at issue____
9. Great Adventure sought relief from this position of the Director regarding the taxability of the value of the discount coupons through a declaratory judgment action brought in the New Jersey Tax Court. The Complaint in this declaratory judgment action was filed on May 16, 1983. An Answer was filed on behalf of the Director on July 15, 1983 ...
10. In Great Adventure, Inc. v. Director, Division of Taxation, 7 N.J.Tax 58 (Tax Court 1984), the New Jersey Tax Court held that the face value of the nonreimbursable discount coupons was not subject to tax under the New Jersey Sales and Use Tax Act, N.J.S.A. 54:32B—1 et seq.
11. As a result of the Tax Court’s decision in the declaratory judgment action, for the 1985-1986 season and thereafter, Great Adventure treated the amount previously paid to the Division of Taxation as a sales tax on the value of the discount coupons as part of its net income....
Plaintiff's initial argument is that it is entitled to the claimed refund because the sales tax it collected and remitted to the Division on the face value of its discount coupons was based on the Director’s erroneous interpretation of the sales tax law. *483 Had it not been for the Director’s erroneous ruling that plaintiff’s discount coupons were subject to sales tax plaintiff would still have collected the same total amount for its admission charge and thus the erroneous tax would have gone into plaintiff’s pocket as income.
In plaintiff’s words its argument is as follows:
Great Adventure provided for sales tax, by first deciding the total ticket price it would charge for admission to the park and safari. This total admission charge figure represented the amount Great Adventure concluded it could charge and attract the number of patrons it needed to make the business venture profitable. Great Adventure then worked backwards from this to arrive at the total ticket price and calculated in the New Jersey sales tax. Therefore, the sales tax on the value of the discount coupons was included in this total ticket price calculation. If Great Adventure had not been required by the Director to pay a sales tax on the value of the discount coupons, it would have treated the amount it attributed to sales tax on the value of the discount coupons as net income to it and as part of its business profit.
For example, in 1984 Great Adventure collected a total of $15.85 for each admission to the park and safari. If the sales tax charge had been appropriate, the amount Great Adventure collected with the use of a $2.00 coupon would have resulted in a net to it of $12.95 after subtraction of the $.90 sales tax and the $2.00 coupon amount. On the other hand, if the value of the $2.00 coupon was not subject to sales tax, the net to Great Adventure would have been $13.07, or additional net income and business profit to Great Adventure of $.12 per full price ticket. This figure would have been calculated by measuring the sales tax on $12.95, the charge for admission after subtracting the $2.00 discount coupon amount. This is illustrated in the example below:
With tax on coupon Without tax on coupon Saving
Admission Charge $14.95 $14.95
Tax @ 6% _.90 _1)0
Full price patron pays $15.85 $15.85
Funseeker discount (2.00) (2.00)
Funseeker patron pays $13.85 $13.85
Less tax _1)0 _.78
Net to Great Adventure $12.95 $13.07 $.12
The gist of plaintiff’s initial argument appears to be that the moneys it collected were not sales tax but rather its own income and that it is entitled to the claimed refund because it in “good faith” remitted the moneys as sales tax to the Division in order to comply “with the Director’s erroneous and illegal interpretation of the law.” The State, therefore, should not be permitted to benefit unjustly from an erroneous interpretation of law.
*484 Additionally, plaintiff argues that even if the moneys collected are construed to be sales tax, and not income, plaintiff is still entitled to a refund based on two old federal cases, Electric Storage Battery Co. v. McCaughn, 54 F.2d 814 (E.D.Pa.1931), aff’d on other grounds 63 F.2d 715 (3 Cir.1933) and Builders’ Club v. United States, 14 F.Supp. 1020 (Ct.Cl.1936).
Defendant’s response to these arguments is to cite “the clear and unambiguous” language of N.J.S.A. 54:32B-20(a) regarding refunds:
In the manner provided in this section the director shall refund or credit any tax, penalty or interest erroneously, illegally or unconstitutionally collected or paid if application to the director for such refund shall be made within 2 years from the payment thereof. Such application may be made by a customer who has actually paid the tax. Such application may also be made by a person required to collect the tax, who has collected and paid over such tax to the director, provided that the application is made within 2 years of the payment to him by the customer, but no actual refund of moneys shall be made to suck person until he shall first establish to the satisfaction of the director, under such regulations as he may prescribe, that he has repaid to the customer the amount for which the application for refund is made. The director may, in lieu of any refund allow credit on payments due from the applicant. [Emphasis supplied]
As our Supreme Court has recognized, in the absence of such specific statutory authority permitting a refund, taxes erroneously, illegally or unconstitutionally collected cannot be refunded. Continental Trailways v. Director, Div. of Motor Vehicles, 102 N.J. 526, 548-550, 509 A.2d 769 (1986). In Continental Trailways the Court refused to permit a refund of $55,392.64 paid by the taxpayer pursuant to an unconstitutional statute for the following reasons:
Public policy discourages suits for the refund of taxes erroneously paid or illegally collected. Governments are entitled to presume that statutes are constitutional. Government budgets are prepared on an annual cash basis. Lavin v. Hackensack Bd. of Educ., 90 N.J. 145, 154 [447 A.2d 516] (1982). Therefore, in the absence of a statutory limitation on the time in which a taxpayer may file suit to declare a tax unconstitutional, governments would be subject to substantial liabilities from refunds of those unconstitutional taxes. Accordingly, in the absence of statutory authority, taxes voluntarily, although erroneously, paid even under an unconstitutional statute cannot be refunded. Berry v. Daigle, 322 A.2d 320, 326-27 (Me.1974); 72 Am.Jur.2d State and Local Taxation ¶ 1074, 1087 (1974) [Id. at 548, 509 A.2d 769]
Therefore, if taxes cannot be refunded in the absence of statutory authority, clearly there can be no argument that when the *485 Legislature does provide for refunds there must be strict compliance with its direction. Strict adherence to statutory requirements is mandated in tax matters because they involve the exigencies of taxation and the administration of government. As noted in Continental Trailways, this view has a solid policy basis.
N.J.S.A. 54:32B-20(a) permits a refund to be made (1) to a “customer who has actually paid the tax” or (2) to a “person required to collect the tax” provided that person has “repaid to the customer” the amount to be refunded. The refund statute, as noted by defendant, is clear and unambiguous. The duty of a court in construing such statutes was set forth in Canada Dry Ginger Ale, Inc. v. F. & A. Distrib. Co., 28 N.J. 444, 147 A.2d 15 (1958) as follows:
When the language employed by the Legislature is clear and unambiguous, the interpretive function of the judicial branch is simple and confined. The law should be applied as written. Under our tripartite system of government, we cannot concern ourselves with matters of legislative wisdom or policy. If the constitutional power exists to promulgate the particular fiat, it must be accepted even if personally we believe it to be a legislative mistake. Nor can the judiciary under the guise of interpretation read into an enactment a more limited policy than that which is clearly projected into action by the words of the lawmakers. [Id. at 458, 147 A.2d 15]
“Construing” or “interpreting” a clear and unambiguous statute is simply not permissible. Judicial restraint is particularly appropriate with taxing statutes. Thus under N.J.S.A. 54:32B-20(a), the only authority permitting a refund, plaintiff must establish that it is either a “customer who has actually paid the tax” or is “a person required to collect the tax” and has repaid to his customer the amount for which refund is sought. There are no other eligible applicants set forth in the statute and refunds are limited to the statutory authorization. Continental Trailways, supra, 102 N.J. at 548, 509 A.2d 769.
Is plaintiff a “customer who has actually paid the tax”? Plaintiff asserts that it actually paid the tax and that it would have retained the moneys remitted were it not for the Director’s incorrect construction of the sales tax law. Does plaintiff’s application meet the statutory requisite? Is it “a customer who has actually paid the tax”? The definitions *486 section of the act, N.J.S.A. 54:32B-2, sets forth the following in pertinent part:
Unless the context in which they occur requires otherwise, the following terms when used in this act shall mean:
(w) “Persons required to collect tax” or “persons required to collect any tax imposed by this act” shall include: every vendor of tangible personal property or services; every recipient of amusement charges; and every operator of a hotel____
(x) “Customer” shall include: every purchaser of tangible personal property or services; every patron paying or liable for the payment of any amusement charge; and every occupant of a room or rooms in a hotel. [Emphasis supplied]
Clearly, plaintiff is not a “customer” who has paid the tax within the meaning of the act. Rather, the act contemplates that those patrons of plaintiff who purchased the tickets to plaintiffs theme park or drive-thru safari are the taxpaying “customers” who would be entitled to a refund of an erroneously paid sales tax. By the same token the definitional provisions clearly classify plaintiff not as a taxpaying “customer” but as a “person required to collect tax.” The refund statute specifically imposes upon this latter category of applicants for refund that they establish that the amount sought to be refunded has been paid to the “customer.” It is readily apparent that based on the definitions set forth above plaintiff is not a taxpaying “customer” but is rather a “person required to collect the tax.”
Although plaintiff does not meet the definition of “customer” in the provision allowing a refund to a “customer who has actually paid the tax,” plaintiff insists that nonetheless, based on its accounting procedures, it paid part of its income to the Division as sales tax only because of the Director’s erroneous construction of the taxing statute. This does not, however, accord with the legislative scheme of the act. As plaintiff meets the definition of one who is required to collect the tax, N.J.S.A. 54:32B-2(w), it is required “to collect the tax from the customer when collecting the ... amusement charge ... to which it applies.” N.J.S.A. 54:32B-12(a). Furthermore, the *487 person required to collect the tax is characterized by the act as a “trustee for and on account of the State.” Ibid.
Regardless of plaintiffs accounting methods or how it wanted to structure its transactions, the tax is not levied against plaintiff but is assessed to plaintiffs customers or patrons and plaintiff is, in reality, nothing more than a tax collector or trustee for the State. The many small sums collected (which become very large in the aggregate) rightfully belong to those customers by whom the payments were made. Plaintiff cannot candidly dispute that as between plaintiff and its customers—it is the customers who are rightfully entitled to the refund—because the customers paid the tax. Nor can plaintiff dispute that it obtained the disputed funds on its declaration to the public that the moneys were collected as sales tax—not income —to be delivered to the State. Plaintiff, without protest, has been voluntarily complying with the Director’s construction of the taxing statute for a period of approximately four years (April 1979 to May 16, 1983) before it instituted its action for declaratory judgment in Great Adventure, Inc. v. Taxation Division Director, supra. The decision in Great Adventure does not change plaintiff’s status. It was and still is a statutory agent of the State for the collection of sales tax. N.J.S.A. 54:32B-12(a).
Therefore, I conclude that plaintiff does not meet the statutory requisite of being a “customer who has actually paid the tax” and cannot make an application for refund on this basis.
Plaintiff, however, is statutorily designated as “a person required to collect the tax” and as such it can obtain a refund of erroneously paid tax if it can establish that it has repaid to its customers the amount for which refund is sought. Plaintiff concedes, however, that it is now impossible to identify those of its customers who utilized the discount coupons during the tax years in issue and thus it cannot make payment to its customers in accordance with the direction of the refund provision.
*488 Inasmuch as plaintiff cannot prove payment to its customers of the erroneously collected tax, defendant now insists that a refund cannot be made based on the plaintiff’s inability to comply with the legislative requisites for refund. •
Plaintiff, however, argues that, “the fact that such amounts will not be refunded to the customers should have no bearing on the refund of the tax itself,” especially when plaintiff cannot comply. Plaintiff relies on the decisions in Electric Storage Battery Co. v. McCaughn, supra, and Builders’ Club v. United States, supra, for support. I am not persuaded by either. To begin with, neither case involves the interpretation of the precise statutory language found in the refund provision of N.J.S.A. 54:32B-20(a).
Secondly, the decision in Electric Storage Battery Co., does not clearly set forth how plaintiff’s refund claim in that case “was a sufficient compliance with the requirement of the statute____” 54 F.2d at 814. Since, in the construction of a state tax refund statute, I am not bound by a decision of a federal district court relative to the interpretation of a federal tax refund statute, it is only to the extent that the opinion sets forth a well-reasoned analysis and legal conclusion that this court may be persuaded to follow it. That is lacking in the extremely brief opinion in Electric Storage Battery Co. v. McCaughn, supra. A reading of the opinion offers no reason why the clear mandate of N.J.S.A. 54:32B-20(a) need not be followed.
The case of Builders’ Club v. United States, supra, is equally unpersuasive in the context of this proceeding. In Builders’ Club the Court of Claims simply struck down a regulation, which precluded the filing of a refund claim unless certain requirements were met, because the regulation was not within the language or intent of the refund statute. The court held that the federal government could not retain an illegally collected tax in the absence of legislative authority.
*489 In this case, however, the Legislature has clearly set forth how moneys erroneously, illegally or unconstitutionally collected or paid voluntarily as tax may be refunded. One who does not or cannot comply with the well-defined requisites or procedures has no right to a refund. Cf. Continental Trailways v. Director, Division of Motor Vehicles, supra, 102 N.J. at 548-550, 509 A.2d 769.
Plaintiff also argues, however, that it is “particularly unjust” to permit the Division of Taxation to retain the moneys that it acquired based solely on the Director’s erroneous interpretation of the law. As previously noted, plaintiff voluntarily acquiesced in defendant’s interpretation by collecting and paying the tax for more than a four-year period from April 1979 (when the Director made his erroneous determination) to May 16,1983 (when plaintiff filed its complaint for declaratory relief). Had plaintiff been more diligent, the court decision that it obtained in September 1984, in all probability, could have been received prior to the beginning of the first period for which refund is claimed here (tax year 1981).
Moreover, the Legislature need not have provided for a refund. See Continental Trailways, supra, 102 N.J. at 547-550, 509 A.2d 769. The Legislature, having enacted a refund provision in this case, however, requires that plaintiff comply with the legislative requisites. Whether those legislative requisites accord with traditional concepts of equity and fairness is simply not relevant. The Legislature has set forth the remedy. I am not at liberty to adjust a clearly worded legislative decision.
Inasmuch as plaintiff cannot comply with the requisites of the refund provision it cannot obtain the requested refund. This determination renders it unnecessary to consider the issues raised in the pretrial order relative to the statute of limitations and res judicata. The Clerk of the Tax Court is directed to enter judgment affirming the Director’s determination.