DeALMEIDA, P.J.T.C.
This is the court’s opinion with respect to the parties’ cross-motions for summary judgment. The central issue before the court is whether plaintiff, a wireless telecommunications provider, is entitled to a refund of approximately $32 million in sales tax it contends it erroneously collected from its customers on charges for Internet access services. The Director, Division of Taxation denied plaintiffs refund claim on procedural grounds. The court concludes that the Director’s decision was unreasonable and contrary to law. As a result, the court reverses the denial of the refund claim on procedural grounds. Although plaintiff contends that the Director conceded the substantive validity of its refund claim during administrative proceedings, the court rejects this position. In light of this conclusion, the court remands this matter *4 to the Director for consideration of the substantive merits of plaintiff’s refund claim. The court retains jurisdiction during the remand proceedings.
I. Findings of Fact and Procedural History
The court makes the following findings of fact based on the submissions of the parties on their cross-motions for summary judgment. R. 1:7-4.
Plaintiff New Cingular Wireless PCS, LLC (“New Cingular”), a subsidiary of AT & T Mobility, LLC (“ATTM”), is a Delaware limited liability company having its principal place of business in Georgia. New Cingular provides Internet access services enabling its customers to use wireless devices, such as smart phones and laptops, to access the Internet. The Internet access services that New Cingular sells are separate and distinct from other telecommunications services it provides and are separately stated on customer bills.
Between November 1, 2005 and September 7, 2010 (the “Refund Claim Period”), New Cingular billed its New Jersey customers $34,424,307.70 in sales tax on charges for Internet access services. The company’s billing records allow it to identify each current and former New Jersey customer from whom it collected sales tax during the Refund Claim Period and to determine the amount of such tax each customer was charged. During the Refund Claim Period, New Cingular remitted to the Director all of the sales tax it collected from its New Jersey customers.
New Cingular takes the position that its collection of sales tax on charges for Internet access services was erroneous. Both federal and New Jersey law prohibit the imposition of sales tax on receipts from the provision of Internet access services. See P.L. 105-277, Div. C, Title XI, Oct. 21, 1998, 112 Stat. 2681-719 (47 U.S.C. § 151 (1998), as amended)(“the Internet Tax Freedom Act”)(“No State or political subdivision thereof may impose any of the following taxes during the period beginning November 1, 2003, and ending November 1, 2014: (1) Taxes on Internet access. ____”); see also N.J.S.A. 54:32B-2(cc)(12)(defining “telecommuni *5 cations service,” the receipts from which are subject to sales tax, as not including “internet access service.”).
In 2009, fifty-four class action lawsuits were filed on behalf of ATTM’s customers in forty-four States alleging that ATTM and its associated companies, including New Cingular, had improperly charged their customers taxes on Internet access services. The claims of New Cingular’s New Jersey customers regarding erroneously collected sales tax were raised in Bendian v. AT & T, Inc. and AT & T Mobility, LLC, filed in the United States District Court for the District of New Jersey. The Judicial Panel on Multidistriet Litigation consolidated the lawsuits, including the Bendian matter, before the United States District Court for the Northern District of Illinois as In re: AT & T Mobility Wireless Data Services Sales Tax Litigation, MDL No. 2147 (N.D.Ill.).
On June 2, 2010, the Hon. Amy J. St. Eve, U.S.D.J., approved a Global Settlement Agreement resolving the consolidated actions, including the Bendian matter.[1] The federal court did not decide the substantive validity of the customers’ claims that New Cingu-lar erroneously collected New Jersey sales tax. Nor did New Cingular admit to the validity of the claims asserted against it. Instead, the settlement agreement is structured to require New Cingular to file a refund claim with the Director for the sales tax collected from its New Jersey customers, and, if the refund claim is granted, deposit the refund in an Escrow Account under the control of the federal court for distribution to the customers. As explained in greater detail below, the agreement is drafted in such a way that there is no possibility that New Cingular will take ownership of any of the refunded taxes. Should the Director *6 grant New Cingular’s refund claim, the refunded taxes will be repaid to New Cingular’s customers by an Escrow Agent under the supervision of the federal court. The parties to the agreement will ask the Escrow Agent to return to the Director any unclaimed refund amounts.
With respect to jurisdictions, such as New Jersey, which authorize either the entity collecting the tax or the taxpaying customer to seek a refund of sales tax, the Global Settlement Agreement requires New Cingular to file a refund claim seeking a refund of the sales tax it erroneously collected.[2] Each settlement class member consented to New Cingular filing a refund claim, the payment of the refund by the taxing district to New Cingular or directly to the court’s Escrow Account, and the distribution of the refunded taxes to the customer by the Escrow Agent under court supervision.
The Escrow Account includes an Escrow Subaccount for each subclass of customers, including a New Jersey customer Escrow Subaccount. According to Section 8.10 of the agreement, when a taxing jurisdiction grants a refund, New Cingular shall seek to have the refund paid directly to the Escrow Subaccount applicable to that jurisdiction. If the taxing jurisdiction issues the refund instead to New Cingular, then New Cingular must transfer all refunded monies it receives into the appropriate Escrow Subac-count within seven business days.
New Cingular’s customers agreed that the funding of jurisdiction-specific Escrow Subaccounts constitutes a repayment of erroneously collected taxes to the customers by New Cingular. In addition, New Cingular assigned all refund amounts that it or the Escrow Subaccounts receive from a taxing jurisdiction to the settlement class members that paid taxes in that jurisdiction:
Each AT & T Mobility-Filed Refund Claim and the refund claim template to be provided for Settlement Class Member-Filed Refund Claims shall include the *7 following ... [a] statement advising the Taxing Jurisdiction that for both (i) refunds paid by the Taxing Jurisdiction directly to the Escrow Account and (ii) refunds paid or credits issued by the Taxing Jurisdiction to AT & T Mobility which AT & T Mobility is obligated to pay to the Escrow Account within seven (7) business days of receipt, all sums deposited in the Escrow Account will be assigned to and solely for the benefit of the Settlement Class in accordance with the distribution procedures under the Settlement Agreement.
Once a jurisdiction-specific Escrow Subaccount is funded, the federal court is asked to approve the distribution of the funds in the jurisdiction-specific Escrow Subaccount to the appropriate customer subclass. Under the supervision of the court, the Escrow Agent will deduct from the Escrow Subaccount attorneys’ fees and costs owed by the class members to class action counsel. The remaining refunded money will thereafter be transferred to a Payment Account. All payments to class members will be made by cheek from the Payment Account. Any refund checks that the United States Postal Service returns as undeliverable and with no forwarding address will be transferred into an Escheat Account under the jurisdiction of the federal court. If any class member entitled to a refund cheek cannot be located, New Cingular and the settlement class will request that the federal court return that class member’s refund to the Director.
The agreement also provides that, when a taxing jurisdiction, such as New Jersey, requires that New Cingular reimburse the erroneously collected taxes to its customers prior to being issued a refund, New Cingular shall fund a “Pre-Refund Escrow Fund” for class members:
In order to effectuate the provision of this Settlement Agreement, each Settlement Class Member agrees that, for purposes of satisfying the requirement of any Taxing jurisdiction, that AT & T Mobility refund taxes to the affected customers prior to granting or paying a refund claim, the payment by AT & T of an amount representing Internet Taxes paid by that Settlement Class Member into a Pre-Refund Escrow Fund will be considered the payment by AT & T of such taxes to such Settlement Class Member.
If the Pre-Refund Escrow Fund has been funded, once New Cingular receives the refund from the Director, the refund will be placed in the New Jersey Escrow Subaccount and the funds previously deposited in the Pre-Refund Escrow Fund by New Cingular will be returned to New Cingular. The same is true if *8 the Director deposits the refund directly into the Escrow Subac-count for New Cingular’s New Jersey customers.[3]
Pursuant to the agreement, New Cingular examined its records to determine whether its New Jersey customers were charged sales tax on receipts from Internet access services during the Refund Claim Period. New Cingular thereafter determined the full amount of sales tax that each New Jersey customer was erroneously billed.
On November 9, 2010, New Cingular submitted a claim to the Director seeking a refund of $34,424,307.70 in sales tax it collected from New Jersey customers on receipts from Internet access services during the Refund Claim Period. New Cingular’s refund claim included a detailed statement with supporting data identifying each customer charged sales tax for Internet access services and the total amount each customer was charged. The claim seeks a refund for more than a million New Cingular customers. New Cingular subsequently notified the Director of reductions in the amount of the refund being sought (including a reduction of only $65.09 for New Jersey customers who opted out of the Global Settlement Agreement). This reduced the refund claim to $34,424,242.61.
There are two statutory provisions relevant to the dispute between the parties regarding the procedural sufficiency of New Cingular’s refund claim. N.J.S.A. 54:32B-20(a), a provision of the Sales and Use Tax Act, provides as follows:
In the manner provided in this section the director shall refund or credit any tax, penalty or interest erroneously, illegally or unconstitutionally collected or paid if application to the director for such refund shall be made within four years from the payment thereof. Such application may be made by a customer who has actually paid the tax. Such application may also be made by a person required to collect the tax, who has collected and paid over such tax to the director, provided that the application is made within four years of the payment to him by the customer, but no actual refund, of moneys shall be made to such person until the person shall first establish to the satisfaction of the director, under such regulations as the *9 director may prescribe, that the person has repaid to the customer the amount for which the application f or refund is made.
[N.J.S.A. 54:32B-20(a)(emphasis added).]
In addition, N.J.S.A. 54:49-14(c), a provision of the State Uniform Tax Procedure Law, provides that “[e]aeh taxpayer shall file a separate refund claim. A refund claim on behalf of a class is not permitted.” N.J.S.A. 54:49-14(c).
After the filing of New Cingular’s refund claim, a Division employee requested additional information from the taxpayer. In a February 23, 2011 letter, a Division employee asked for “documentation that the sales tax being requested for refund was reimbursed to the customers.” This is an apparent attempt to determine if New Cingular had complied with N.J.S.A. 54:32B-20(a).
On March 16, 2011, New Cingular responded to the Division arguing that the statutory provision requiring a demonstration of reimbursement to customers, while a prerequisite to an actual refund, “is not a prerequisite to the Division’s review of the refund claim or its determination of the correct amount to be refunded.” According to the taxpayer, “the statute does not require a vendor to repay the tax to customers prior to receiving a preliminary acknowledgement of the validity — and proper amount — of the refund claim from the Division. Any other interpretation would require a vendor to pay funds out of pocket to its customers (to ‘re-pay’ taxes the vendor collected from customers and remitted to the Division) in order to obtain review of a refund claim that may or may not be granted.” In addition, New Cingular stated its belief that the terms of the Global Settlement Agreement adequately address any concerns the Director may have regarding customer repayment.
On May 23, 2011, Susan Greitz, a Division employee, responded to New Cingular’s request for a “preliminary acknowledgment of the validity” of the refund claim. The employee stated:
Your letter requests a “preliminary acknowledgement of the validity” of the claim. This letter responds specifically to the underlying premise of the claim, which concludes that the sale of data services, as described therein, were not subject to taxation under the New Jersey Sales and Use Tax Act (N.J.S.A. 54:32B-1 et seq.) during the period in question. As such, this letter outlines the Division’s position *10 on the appropriate sales tax treatment of sales of “internet access” and “data services.” The remainder of this question will be addressed in a letter under separate cover from the Sales Tax Refunds section directly.
As you are aware, sales of telecommunications services are subject to sales tax and have been during the entire period to which the claim relates. N.J.S.A. 54:32B-3(f)(1). However, charges for access to the Internet have not been taxed, even when provided by a telecommunications provider. New Jersey law was amended to expressly exclude “internet access service” from the scope of the definition of "telecommunications service.” (P.L. 2008, c.123, effective December 19, 2008, operative January 1,2009; N.J.S.A. 54:32B-2(cc)).
Further, Federal law provides for a moratorium on the taxing of Internet access. Provisions of the Internet Tax Freedom Act Amendments Act of 2007 (P.L. 110-108) extend the moratorium on taxes on Internet access and multiple and discriminatory taxes on electronic commerce until November 1, 2014. The moratorium applies to a tax on Internet access, regardless of whether the tax is imposed on a provider of Internet access or a buyer of Internet access, and regardless of the terminology used to describe the tax.
You describe the data services provided by your client to “permit the customer to transmit electronic data across the Internet — thus enabling the customer to ‘surf the Internet, send electronic mail, and make numerous other uses of the Internet.” You state that these services are “separate and distinct from the voice calling services” provided by and through your client. The charges that relate to the claim do not include any sales of data sendees that were bundled with charges for any other sendees.
As your description of the services at issue fall within the scope of “internet access sendees,” sales tax is not applicable. Therefore, it appears that the collection of sales tax on sales of data sendees, as described herein, was in error. The collection of sales tax in en'or is a valid reason to support a Claim for Refund under N.J.S.A. 54:32B-20. This assumes that the data sendees sold by New Cingular Wireless, PCS LLC that are the subject of the claim are only for Internet access and are not provided in combination with any elements of telecommunications, information services or software.
Again, this letter does not attempt to address any procedural issues relating to the claim and should be deemed as guidance only on the issue of sales tax applicability.
The letter copied three officials at the Division: (1) Deputy-Director Denise Lamberb-Harding; (2) Chief of Audit Services Susan Kane; and (3) Chief and Supervising Auditor of the Sales Tax Refund Section James Allen.
On July 13, 2011, a Division employee requested additional information from New Cingular regarding its refund claim:
In reference to Tax Service Specialist Susan Greitz’s letter dated May 23, 2011, provide proof that the sales tax being requested for refund was reimbursed to the customers per N.J.S.A. 54:32B-20.
On August 12, 2011, New Cingular’s counsel responded to this request. The response began with a confirmation that the Divi *11 sion had conceded the substantive validity of New Cingular’s refund claim:
As you are aware, Ms. Greitz’s letter confirms that the charges for Internet access service were not subject to New Jersey sales tax — conceding the core substantive issue for the Refund Claim.
With respect to the customer reimbursement provision of N.J.S.A. 54:32B-20(a), New Cingular reiterated its reliance on the terms of the Global Settlement Agreement:
[A]s we have previously explained, the Global Class Action Settlement Agreement (“Settlement Agreement”) establishes a mechanism for the reimbursement of customers. We understand that the Division and the Attorney General’s office contend that amounts held in a pre-refund escrow account by the Bank of New York Mellon under the control of the United States District Court for the Northern District of Illinois would not constitute a refund to AT & T customers, apparently because attorneys’ contingent fees and expenses approved by the Court would be funded by the class members from their portion of the recovery. This conclusion is contrary to New Jersey law, as is the Division’s refusal to determine the proper amount of the refund that is due subject to resolving the customer repayment issue.
On October 5, 2011, a Division auditor issued a notice denying New Cingular’s refund claim. The auditor concluded that a portion of the claim, approximately $1,858,000, was barred by the applicable four-year statute of limitations. The auditor rejected the remainder of the refund claim, approximately $32,566,242.61, on two grounds: (1) that New Cingular has not demonstrated that it reimbursed its customers the requested refund amounts under N.J.S.A. 54:32B-20(a); and (2) that a refund claim on behalf of a class is not permitted under N.J.S.A. 54:49-14(c). The October 5, 2011 notice expressly reserved the Director’s “right to review the substantive validity of the refund claim and to deny the claim based on any applicable laws.”
On January 3, 2012, New Cingular filed a Complaint in this court challenging the October 5, 2011 denial of its refund claim on both substantive and procedural grounds. New Cingular does not dispute the determination that a portion of its refund claim was untimely.
On June 15, 2012, during the pendency of this action, New Cingular informed the Director that it had reduced its refund *12 claim by an additional $819,787.07 due to billing code errors and bad debt charges that were incorporated in its original claim.
On December 10, 2012, the court granted New Cingular’s motion for a Protective Order pursuant to R. 1:38-11 to shield from public disclosure customer-related information, including customer names, account numbers and service records, filed with the court but protected from disclosure by federal law.
On July 16,2012, New Cingular moved pursuant to R. 4:46-2 for summary judgment in its favor. New Cingular seeks relief on both the procedural grounds for the denial of the refund claim and with respect to the substance of the claim, which New Cingular contends was conceded by the Director prior to issuance of the October 5,2011 denial notice.
On October 9, 2012, the Director opposed New Cingular’s motion and cross-moved pursuant to R. 4:46-2 for summary judgment in his favor. The Director limits his claim for relief to the procedural grounds for denial of the refund claim. He argues that in the event the court agrees with New Cingular that its claim is not procedurally barred, the court should remand the matter to the Division of Taxation for consideration of New Cingular’s substantive claims.
The court thereafter heard oral argument from counsel. After oral argument, at the direction of the court, both parties filed supplemental briefs and other materials with respect to the question of whether the Director conceded the substantive validity of New Cingular’s refund claim below and whether, should the court agree with New Cingular on the procedural issues, the matter should be remanded to the Division.
III. Conclusions of Law
Summary judgment should be granted where “the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law.” R. 4:46-2(c). In Brill v. Guardian Life Ins. Co., 142 N.J. 520, 523, 666 *13 A.2d 146 (1995), our Supreme Court established the standard for summary judgment as follows:
[W]hen deciding a motion for summary judgment under Rule 4:46-2, the determination whether there exists a genuine issue with respect to a material fact challenged requires the motion judge to consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party in consideration of the applicable evidentiary standard, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party.
“The express import of the Brill decision was to ‘encourage trial courts not to refrain from granting summary judgment when the proper circumstances present themselves.’ ” Township of Howell v. Monmouth County Bd. of Taxation, 18 N.J.Tax 149, 153 (Tax 1999)(quoting Brill, supra, 142 N.J. at 541, 666 A.2d 146). The court concludes that this matter is ripe for decision by summary judgment. There are no material facts in dispute between the parties on the procedural elements of New Cingular’s refund claim. The validity of the Director’s denial of New Cingular’s claim on procedural grounds can be determined by application of the law to the undisputed facts.
The court’s analysis is influenced by the familiar principle that the Director’s interpretation of tax statutes is entitled to a presumption of validity. “Courts have recognized the Director’s expertise in the highly specialized and technical area of taxation.” Aetna Burglar & Fire Alarm Co. v. Director, Div. of Taxation, 16 N.J.Tax 584, 589 (Tax 1997)(citing Metromedia, Inc v. Director, Div. of Taxation, 97 N.J. 313, 327, 478 A.2d 742 (1984)). The scope of judicial review of the Director’s decision with respect to the imposition of a tax “is limited.” Quest Diagnostics, Inc. v. Director, Div. of Taxation, 387 N.J.Super. 104, 109, 903 A.2d 442 (App.Div.), certif. denied, 188 N.J. 577, 911 A.2d 69 (2006). The Supreme Court has directed the courts to accord “great respect” to the Director’s application of tax statutes, “so long as it is not plainly unreasonable.” Metromedia, supra, 97 N.J. at 327, 478 A.2d 742. See also GE Solid State, Inc. v. Director, Div. of Taxation, 132 N.J. 298, 306, 625 A.2d 468 (1993)(“Generally, courts accord substantial deference to the interpretation an agency gives to a statute that the agency is charged with enforcing.”). However, judicial deference is not absolute. An administrative agency’s *14 interpretation that is plainly at odds with a statute will not be upheld. See Oberhand v. Director, Div. of Taxation, 193 N.J. 558, 568, 940 A.2d 1202 (2008)(citing GE Solid State, supra, 132 N.J. at 306, 625 A.2d 468); Advo, Inc. v. Director, Div. of Taxation, 25 N.J.Tax 504, 511 (Tax 2010).
As a general rule, “[p]ublic policy discourages suits for the refund of taxes erroneously paid or illegally collected.” Continental Trailways, Inc. v. Director, Div. of Motor Vehicles, 102 N.J. 526, 509 A.2d 769 (1986), app. dim., 481 U.S. 1001, 107 S.Ct. 1636, 95 L.Ed.2d 195 (1987). Without specific statutory authority, “taxes erroneously, illegally or unconstitutionally collected cannot be refunded.” Great Adventure, Inc. v. Director, Div. of Taxation, 9 N.J.Tax 480, 484 (Tax 1988). As this court explained,
if taxes cannot be refunded in the absence of statutory authority, clearly there can be no argument that when the Legislature does provide for refunds there must be strict compliance with its direction. Strict adherence to statutory requirements is mandated in tax matters because they involve the exigencies of taxation and the administration of government----
[Id. at 484-85.]
See Estate of Ehringer v. Director, Div. of Taxation, 24 N.J.Tax 599, 610-11 (Tax 2009), aff'd, 412 N.J.Super. 316, 990 A.2d 678 (App.Div.2010).
A. N.J.S.A. 54:32B-20(a).
The plain language of a statute must be given effect by the courts. Merin v. Maglaki, 126 N.J. 430, 434, 599 A.2d 1256 (1992). “A statute should be interpreted in accordance with its plain meaning if it is clear and unambiguous on its face and admits of only one interpretation.” Board of Educ. v. Neptune Twp. Educ. Ass’n, 144 N.J. 16, 25, 675 A.2d 611 (1996)(quotations omitted). “[T]he best approach to the meaning of a tax statute is to give to the words used by the Legislature their generally accepted meaning, unless another or different meaning is expressly indicated.” Public Serv. Elec. & Gas Co. v. Township of Woodbridge, 73 N.J. 474, 478, 375 A.2d 1165 (1977)(quotations omitted). “ ‘The duty of ... this court is to give meaning to the wording of the statute and, where the words used are unambiguous, apply its plain meaning in the absence of a legislative intent *15 to the contrary.’ ” Vassilidze v. Director, Div. of Taxation, 24 N.J.Tax 278, 291 (Tax 2008)(quoting Sutkowski v. Director, Div. of Taxation, 312 N.J.Super. 465, 475, 712 A.2d 229 (App.Div.1998)).
N.J.S.A. 54:32B-20(a) plainly allows “a person required to collect the tax, who has collected and paid over such tax to the director” to make an “application to the director” for a refund of the tax. New Cingular is “a person required to collect the tax, who has collected and paid over such tax to the director.” See N.J.S.A. 54:32B-2(w); N.J.S.A. 54:32B-12. It is entitled, therefore, to make an “application to the director” for a refund. Nothing in N.J.S.A. 54:32B-20(a) requires that the person required to collect the tax repay that tax to its customers before making its application for a refund. New Cingular, therefore, had a statutory right to have its refund application considered by the Director without first having to repay the tax it collected to its customers.
A contrary reading of the statute, one requiring repayment of the tax to the customers before a refund claim can even be considered, would, in effect, rewrite N.J.S.A. 54:32B-20(a) by attaching the repayment obligation to the right to make an application as opposed to the right to receive an “actual refund” as the statute is written. It is well established that “ ‘full effect should be given, if possible, to every word of a statute. [The Court] cannot assume that the Legislature used meaningless language.’ ” Gabin v. Skyline Cabana Club, 54 N.J. 550, 555, 258 A.2d 6 (1969). The adjective “actual” before the noun “refund” in N.J.S.A. 54:32B-20(a) has meaning. It is plain that the statute contains a repayment provision that must be fulfilled before an “actual” refund — the payment of money from the State treasury— can be made to a person required to collect the tax and not before the validity of the refund claim can be considered.
A contrary interpretation of the statute also would impose an unreasonable requirement on persons required to collect the tax. A person required to collect the tax, without any assurance of success on its refund claim, would have to repay to each of its customers all of the sales tax it collected before it could even ask *16 the Director whether the refund was warranted. In the event that its refund claim ultimately was denied, the person required to collect the tax would be left unable to recoup the taxes it returned to its customers. The customers, on the other hand, would enjoy a windfall in the form of reimbursed taxes, the burden of which they should otherwise have borne. This would result in a shifting of the incident of taxation. It is well established that it is the ultimate consumer, not the person required to collect the tax, who is liable for sales tax. N.J.S.A. 54:32B-12; N.J.S.A. 54:32B-14.
The Director, in effect, recognized this common sense reading of N.J.S.A. 54:32B-20(a) when his employee issued her May 23, 2011 letter outlining the Division’s position on the appropriate sales tax treatment of receipts from the sale of Internet access services. This communication was issued separate and apart from a determination of whether New Cingular had met the procedural obligations of the refund statutes. During oral argument, counsel for the Director conceded that a person required to collect the tax need not repay erroneously collected sales tax to its customers prior to having the substantive validity of its refund claim decided. The Director, however, did not follow this procedure. Rather than deciding the substantive validity of New Cingular’s claim in his October 5, 2011 notice, the Director took the position that New Cingular could never satisfy the repayment provision of N.J.S.A. 54:32B-20(a) through the procedures established in the Global Settlement Agreement and, because of this determination, the Director need not decide the substantive validity of New Cingu-lar’s claim. The Director, therefore, effectively withdrew the substantive determination set forth in his employee’s May 23, 2011 letter, and reserved his option to make a determination on the substantive elements of New Cingular’s refund claim should New Cingular prevail in this court on the procedural questions.
The plain language of N.J.S.A. 54:32B-20(a) vests in the Director the discretion to determine if the repayment obligation in the statute has been met and to promulgate regulations establishing objective criteria for decision making in this area. The Director has not promulgated regulations under the statute. As a result, taxpayers and the courts have no written guidance, adopted *17 through the Administrative Procedure Act, detailing the criteria that the Director will use to determine whether the repayment obligation in N.J.S.A. 54:32B-20(a) has been satisfied. The Director’s determination that New Cingular did not satisfy N.J.S.A. 54:32B-20(a) is, therefore, subject to review under the generally applicable standard by which this court reviews all decisions of the Director applying the tax laws: the Director’s interpretation of the statute will be upheld unless plainly unreasonable or at odds with the statute’s plain meaning.
The court concludes that the Director’s rejection of New Cingu-lar’s refund claim is plainly unreasonable and at odds with N.J.S.A. 54:32B-20(a). According to the express terms of the Global Settlement Agreement, New Cingular has contractually relinquished any rights to funds it places in the Pre-Refund Escrow Fund. Its customers have contractually agreed that New Cingular’s deposit into the fund satisfies their right to repayment from New Cingular of erroneously collected sales tax. These transactions are all subject to the enforcement powers of a United States District Court Judge. When the Director issues a refund into the Escrow Subaccount for New Cingular’s New Jersey customers, New Cingular will retrieve the funds it placed in the Pre-Refund Escrow Account. If the Director issues a refund directly to New Cingular, New Cingular will transfer the refund into the Escrow Subaccount and retrieve the funds it placed in the Pre-Refund Escrow Account. In either case, it is not possible for New Cingular to take ownership of any of the refunded amounts. It is not reasonable for the Director to conclude that these circumstances do not constitute repayment of the erroneously collected sales tax to New Cingular’s customers.
In addition, the Director’s position is at odds with the plain meaning of N.J.S.A. 54:32B-20(a). As noted above, the incidence of sales tax is designed to fall on the customer. Consequently, any refund of an erroneously collected sales tax must go to the customer who paid the tax. The person required to collect the tax is a mere agent of the State in the collection and remittance of the tax. The repayment provision of N.J.S.A. 54:32B-20(a) ensures that a person required to collect the tax does *18 not get a windfall by failing to transmit any refund granted to its customers. New Cingular’s payment into the Pre-Refund Escrow Fund under the Global Settlement Agreement fulfills the statute’s objective, as the person required to collect the tax will not take ownership of any of the refunded tax.
The Director justifies his position on a number of grounds. His first objection derives from the fact that New Cingular and its customers authorized an Escrow Agent to repay to New Cingular’s customers the refunds placed in the Escrow Subaccount. According to the Director, no authority exists allowing a person required to collect the tax to authorize a third-party to issue the repayment of erroneously collected sales tax to customers. No authority exists prohibiting such an arrangement either. In the absence of a statutory prohibition, there is no reasonable basis for the Director to be concerned with how New Cingular elects to repay its customers erroneously collected taxes. There are sufficient safeguards in place — the express terms of the Global Settlement Agreement, the fiduciary obligations of the Escrow Agent and the oversight of a federal District Court Judge — to ensure that the purpose of the repayment provision of N.J.S.A. 54:32B-20(a) is fulfilled. The fact that an Escrow Agent will repay New Cingular’s customers does not alter the fact that it is the customers and not New Cingular who will wind up with the refunded tax. Indeed, New Cingular’s use of an Escrow Agent — who undoubtedly will have its own fiduciary obligations to ensure that New Cingular’s customers are repaid the erroneously collected tax— arguably makes it more likely that the purpose of the statute will be fulfilled, as the customers will have two entities to take legal action against if they are not repaid the refunded taxes. See Cooper v. Bergton, 18 N.J.Super. 272, 277, 87 A.2d 358 (App.Div.1952) (holding that a depository under an escrow agreement “becomes the agent of both parties as to such delivery; and neither party can alone rescind.”).
The Director also argues that New Cingular’s funding of the Pre-Refund Escrow Fund is not repayment to its customers under N.J.S.A. 54:32B-20(a) because the customers will not receive repayment until a condition is met. The condition, however, *19 is the Director’s issuance of a refund check — either directly to the Escrow Subaccount or to New Cingular for deposit in the Escrow Subaccount for New Jersey customers. The Director conceded during oral argument that New Cingular is entitled to a substantive determination on its refund claim prior to having to satisfy its repayment obligation. Thus, at the time that New Cingular funds the Pre-Refund Escrow Fund it will have secured a decision from the Director approving the refund and the amount of the refund. Surely, it is not reasonable for the Director to conclude that New Cingular’s funding of the Pre-Refund Escrow Account does not constitute repayment because the Director’s issuance of the “actual refund,” although approved substantively, has not yet taken place.
Nor is there any reasonable basis for the Director to object to the fact that the Escrow Agent will have to act — to deduct attorney’s fees and costs, to transfer the funds to the Payment Account, and to issue the repayment cheeks — before the customers will be repaid. There is nothing unusual about the notion that a party will give an escrow agent funds for ultimate distribution to a beneficiary after satisfaction of conditions. As our courts long ago held, a “deposit in escrow is irrevocable except by consent of both parties [and] [u]pon performance of the condition mentioned in the escrow agreement, the depositary is bound to make delivery pursuant to the agreement____” Mantel v. Landau, 134 N.J. Eq. 194, 195, 34 A.2d 638 (Ch.1943), aff'd, 135 N.J. Eq. 456, 39 A.2d 88 (E & A.1944). Here, New Cingular will satisfy its obligations to its customers by funding the Pre-Refund Escrow Fund prior to issuance of the actual refund by the Director.
In Central Illinois Light Co. v. Department of Revenue, 117 Ill.App.3d 911, 73 Ill.Dec. 178, 453 N.E.2d 1167 (1983), an Illinois appellate court considered an agreement between a vendor who erroneously collected a tax and its customer in the context of a statutory repayment obligation. In that case, Central Illinois Light Company (“CILCO”) paid a tax to its suppliers, who remitted the tax to the state. Id.,Id., 73 Ill.Dec. 178, 453 N.E.2d at 1168. A refund of the tax was sought. Illinois required the suppliers to show they had unconditionally repaid the tax to its customer in *20 order to secure the refund. Ibid. The suppliers issued an unconditional promissory note in the amount of the tax paid by CILCO and filed a refund claim. Ibid. Illinois argued that issuance of the promissory note did not satisfy the repayment obligation. Id. at 1170. The appellate court disagreed: “The suppliers’ use of promissory notes in the instant case satisfies and prevents the unjust enrichment purpose of our Revenue Act.” Ibid. Here, the use of Escrow Accounts managed by an Escrow Agent acting under federal court supervision surely is sufficient to safeguard repayment of the erroneously collected tax to New Cingular’s customers.
Finally, the Director contends that New Cingular’s customers will not be repaid the erroneously collected tax within the meaning of N.J.S.A. 54:32B-20(a) because the Escrow Agent will deduct attorney’s fees and costs from the amounts repaid to the customers. The Director argues that from the plain language of the refund statute, it is obvious that the Legislature does not permit a person required to collect the tax to deduct any kind of fees or other costs before repaying erroneously collected tax. There are two flaws with this argument. First, the statute contains no express prohibition on a customer authorizing the deduction from its refund of the fees and costs it incurred in securing the refund. It is of no concern to the Director if a customer who is the ultimate beneficiary of a refund claim is content to pay its attorney’s fees and costs out of the proceeds of its successful refund claim. No legitimate State purpose is served by a requirement that a refund be repaid in full to a customer before that customer can pay its attorney and other legal costs. The purpose of the repayment requirement of N.J.S.A. 54:32B-20(a) is to ensure that the person required to collect the tax does not retain erroneously collected sales tax that has been refunded by the Director. There is no suggestion in the Director’s moving papers that New Cingular will receive any of the attorney’s fees or costs deducted from the customers’ refunds. There is no legitimate State interest in ensuring that a customer’s counsel is not compensated for successfully bringing about a refund claim.
*21 Second, under the settlement agreement, New Cingular is not deducting any amount from the taxes it will repay to its customers. Pursuant to the terms of the agreement, upon its deposit into the Pre-Refund Escrow Fund of the amount to be refunded, New Cingular has fully satisfied is repayment obligation to the customers. At that point, the repayment to New Cingular’s customers has taken place. It is the Escrow Agent, acting as a fiduciary for the customers and with the consent of the customers, who will deduct attorney’s fees and costs after the repayment has occurred. This is no different substantively from the Director at the conclusion of litigation depositing a refund check in a taxpayer’s attorney’s trust account to permit taxpayer’s counsel to deduct attorney’s fees and costs prior to issuing the balance of the refund to the taxpayer. See N.J.S.A. 54:51A-22 (allowing for the award of attorney’s fees to prevailing taxpayers in Tax Court under specified circumstances, and thereby, recognizing that taxpayers are likely to incur attorney’s fees when seeking a refund of tax from the Director).
B. N.J.S.A. 54:49-14(c).
As noted above, N.J.S.A. 54:49-14(c), a provision of the State Uniform Tax Procedure Law, provides that “[e]aeh taxpayer shall file a separate refund claim. A refund claim on behalf of a class is not permitted.” The court concludes that the refund claim filed by New Cingular is not precluded by N.J.S.A. 54:49-14(c). The statute indicates that each “taxpayer” must file an individual claim. For sales and use tax purposes New Cingular is not a “taxpayer.” New Cingular is a “person required to collect the tax,” N.J.S.A. 54:32B-2(w), which must be paid by its customers, the “taxpayers” in the sales tax context. For purposes of the State Uniform Tax Procedure Law, “[t]axpayer means any person owing or liable to pay any State tax or any person deemed by the director to be so owing or liable.” N.J.S.A. 54:48-2.
Nor is New Cingular’s refund claim filed “on behalf of a class.” In civil litigation generally, a “class” has multiple members but is represented by only one or a few “representative parties on behalf of all.” R. 4:32-1(a). Class representation is authorized where *22 “the class is so numerous that joinder of all members is impracticable.” Ibid. Class membership includes any individual whose claims or defenses “are typical of the claims or defenses of the class” and who share “questions of law or fact common to the class,” without the necessity of identifying each of the individual members as plaintiffs. Ibid. New Cingular’s refund claim is not made on behalf of a class. Instead, the claim individually identifies over one million New Cingular customers, with a specific delineation of the amount of sales tax each of the customers was erroneously charged. There is no “class representative” making a claim on behalf of unnamed similarly situated individuals. Thus, New Cingular’s refund claim is unlike the refund claim rejected by the Director in Great Adventure, supra, in which the vendor admitted that it would be impossible to identify all of its customers who were erroneously charged sales tax — people who purchased tickets to an amusement park with discount coupons — for the purpose of reimbursing erroneously collected sales tax. 9 N.J.Tax at 487-88.
The Director concedes that New Cingular may file a refund claim on behalf of a single customer — this must be so or N.J.S.A. 54:32B-20(a) has no meaning. It is also true that N.J.S.A. 54:32B-20(a) contains no limitation on the number of refund claims that New Cingular can file. Logically, then, New Cingular could have filed more than 1 million separate refund claims, one for each of its customers who it believes was erroneously charged sales tax. It is, therefore, unreasonable for the Director to conclude that New Cingular is prohibited from filing a single refund claim individually listing each of its more than 1 million customers and the amount of the refund to which each is entitled.
The fact that the impetus for New Cingular’s claim was a class action suit filed against New Cingular in federal court does not convert New Cingular’s refund claim into one filed on behalf of a class. Had a New Cingular customer filed a refund claim with the Director as a purported class representative of other New Cingular customers who were erroneously assessed sales tax, the claim likely would have been precluded by N.J.S.A. 54:49-14(e). The Division is not authorized, nor equipped, to process a class repre *23 sentative claim, which would require findings concerning the parameters and propriety of the class, the adequacy of class representation, complex notification and opt-out procedures, refund administration, and other concerns particular to class actions. The Division, however, is authorized and equipped to process a single business refund claim filed by a person required to collect tax which lists each of the customers and the amount of tax erroneously assessed against each customer. Such a claim is the routine work of the Division, requiring a substantive determination of whether the refund is warranted, a calculation of the amount of the refund due to the customer, a determination that the customers have been repaid the erroneously collected tax under N.J.S.A. 54:32B-20(a) and issuance of a single refund check to the person required to collect the tax.
The holding in Kawa v. Wakefern Food Corp., 24 N.J.Tax 39 (Tax), aff'd, 24 N.J.Tax 444 (App.Div.2008), certif. denied, 200 N.J. 369, 982 A.2d 456 (2009), does not support the Director’s interpretation of N.J.S.A. 54:49-14(c). That case concerns a class action suit filed in the Superior Court under the New Jersey Consumer Fraud Act against persons required to collect sales tax. The purported class representative made several purchases from the defendant supermarkets on which, she alleged, she was overcharged sales tax. Id. at 41. The overcharges were alleged to have occurred because the defendants failed to consider reduced and discounted sales prices from use of plaintiffs shopper’s club card when calculating the tax. Ibid. The erroneously collected taxes had been remitted by the supermarkets to the Director. The supermarkets moved in lieu of answer to dismiss the Complaint “on the ground that the plaintiffs’ exclusive remedy is to seek a refund of the overpaid tax from the Division of Taxation as provided in the Sales and Use Tax Act, N.J.S.A. 54:32B-1 to -29, the State Uniform Tax Procedure Law, N.J.S.A. 54:48-1 to 54:53-18, and the regulations promulgated under those statutes.” Id. at 42.
Judge Menyuk agreed:
I conclude that the Division of Taxation has exclusive jurisdiction in the first instance to determine whether a transaction is taxable or not taxable, to determine the price on which the tax is calculated, to determine the correct amount of the tax, *24 and if tax has been overpaid and remitted to the Director, to refund the tax pursuant to N.J.S.A. 54:32B-20(a).
[Id. at 51.]
Finding a conflict between the Consumer Fraud Act and the Sales and Use Tax Act, the court dismissed the Complaint for failure to state a claim. Ibid.
The facts of the present case simply do not match those before the court in Kawa. Here, a person required to collect sales tax filed a business refund claim pursuant to N.J.S.A. 54:32B-20(a), exactly what Judge Menyuk held was the appropriate course of action when seeking a refund of erroneously collected sales tax.
In addition, N.J.S.A. 54:32B-20, which is more specific to New Cingular's sales tax refund claim than is the generally applicable N.J.S.A. 54:49-14(c), allows two actors to seek a refund of sales tax. First, a “customer who has actually paid the tax” may apply for a refund. The Director’s regulations label such a claim as an “individual refund” claim. N.J.A.C. 18:2-5.8(d)(2). Second, the statute authorizes “a person required to collect the tax, who has collected and paid over such tax to the director” to file a refund claim. The Director’s regulations label such a claim as a “business refund” claim. N.J.A.C. 18:2-5.8(d)(1).
N.J.A.C. 18:2-5.8(d)(4) recognizes that a “business refund” claim may be filed by a person required to collect the tax on behalf of multiple customers. The regulation establishes special refund application procedures that apply where there are more than 25 transactions forming the basis for one business refund claim. This makes perfect sense, given the likelihood that a person required to collect the tax will have hundreds, thousands, or, as is the case of New Cingular, over a million customers who are charged sales tax. This is precisely the type of claim filed by New Cingular. It is clear that N.J.S.A. 54:32B-20(a) and the Director’s regulations interpreting the statute contemplate a claim by a person required to collect the sales tax on behalf of numerous customers. The fact that New Cingular has more than a million customers who it alleges were erroneously charged sales tax does not convert its business refund claim into a class action.
The Sales and Use Tax Act provides that sales taxes are governed by the provision of the State Tax Uniform Procedure *25 Law, except to the extent that a provision of the Sales and Use Tax Act conflicts with the State Tax Uniform Procedure Law. N.J.S.A. 54:32B-28. If, as the Director contends, N.J.S.A. 54:49-14(c) can be read to preclude New Cingular’s business refund claim because of the large number of customers on whose behalf New Cingular makes the claim, N.J.S.A. 54:49-14(e) would be in conflict with N.J.S.A. 54:32B-20(a). The more specific provision of the Sales and Use Tax Act, N.J.S.A. 54:32B-20(a), would control.
C. Director’s Review of the Substantive Merits of New Cingu-lar’s Refund, Claim.
New Cingular argues that the Director, in the May 23, 2011 letter of his employee, made a substantive determination that New Cingular’s refund claim is valid. As a result, New Cingular takes the position that this matter should be remanded to the Division solely for the purposes of “audit work” — affording the Director an opportunity to determine what portion of the claim should be barred as outside the statute of limitations and to confirm that the sales tax refund sought is on charges for the unbundled Internet access services described in detail in New Cingular’s refund claim. New Cingular contests the Division’s ability to assert legal defenses or make a substantive determination on the validity of New Cingular’s claim during a remand. In addition, New Cingular requests that the court retain jurisdiction over this matter during the remand proceedings.
The Director contends that the May 23, 2011 letter does not decide the substantive validity of New Cingular’s claims. According to the Director, the letter contains only a “preliminary acknowledgment of the validity” of New Cingular’s claim which was superseded and effectively rescinded by the October 5, 2011 notice, which expressly noted that the Director reserved the “right to review the substantive validity of the refund claim and to deny the claim based on any applicable laws.” In addition, the Director argues that there is no legal authority for the proposition that a letter from the Division’s regulatory services unit is binding on the Director in the course of an administrative hearing.
*26 The Director also notes that when executing the Global Settlement Agreement New Cingular did not admit that it erroneously collected sales tax from its customers on Internet access services. According to the Director, he should have an opportunity to explore the “apparent contradictory positions” taken by New Cingular in not conceding it erroneously collected tax in the class action suit but also seeking a refund from the Director of the tax it collected on the ground that receipts from Internet access services are not subject to sales tax.
The court determines that the Director expressly limited his October 5, 2011 notice to the procedural aspects of New Cingular’s refund claim and stated that he was not making a substantive determination with respect to the validity of the claim. He should, therefore, have an opportunity to determine if New Cingular’s claim is substantively valid prior to judicial review of that question. Had the October 5, 2011 notice not contained the express reservation with respect to the substance of New Cingular’s claims, the court might well conclude that the Director adopted the “preliminary analysis” contained in the May 23,2011 letter. It is readily apparent, however, that the Director elected to dispose of New Cingular’s refund claim solely on procedural grounds.
The arguments raised by New Cingular with respect to the Director’s authority to reconsider a final determination on a substantive issue are not implicated here. See Harry’s Lobster’s House Corp. v. Director, Div. of Taxation, 23 N.J.Tax 149 (Tax 2006)(noting the limited nature of the Director’s authority to reopen a final determination assessing sales tax), aff'd, 2007 WL 1703510 (App.Div. Jun. 14, 2007), certif. denied, 192 N.J. 478, 932 A.2d 29 (2007). Nor is the entire controversy doctrine implicated by a remand for the Director’s first opportunity to make a substantive determination with respect to the validity of New Cingular’s refund claim. See R. 4:30A (setting forth entire controversy doctrine); Woodward-Clyde Consultants v. Chemical & Pollution Sciences, Inc., 105 N.J. 464, 472-73, 523 A.2d 131 (1987)(explaining purposes of entire controversy doctrine); Union City Assocs. v. City of Union City, 247 N.J.Super. 249, 588 A.2d *27 1279 (App.Div.1991) (applying entire controversy doctrine to Tax Court proceedings).
The court is not of the view that the square corners doctrine precludes the Director from reserving his right to review the preliminary substantive determination made in the May 23, 2011 letter. See F.M.C. Stores Co. v. Borough of Morris Plains, 100 N.J. 418, 426-27, 495 A.2d 1313 (1985) (detailing the elements of the square corner doctrine); New Concepts for Living, Inc. v. City of Hackensack, 376 N.J.Super. 394, 403, 870 A.2d 697 (App.Div.2005) (holding that the doctrine “cannot be applied with rigidity or undue technicality.”); Lowe’s Home Centers, Inc. v. City of Millville, 25 N.J.Tax 591 (Tax 2010)(estopping taxing authority from asserting statute of limitations defense where tax assessor misstated a filing deadline in writing to taxpayer, who relied on the tax assessor’s misstatement to its detriment). New Cingular argues that during the course of the administrative proceedings the Director accepted that New Cingular’s claim was substantively valid, but retreated from that position only when he realized that his procedural objections to New Cingular’s claims were flawed. New Cingular intimates that the Director engaged in a delaying tactic by reserving his right in the October 5, 2011 notice to review the substantive merits of New Cingular’s claim. The court is not prepared to adopt New Cingular’s suggestion that the Director acted improperly.
In light of the court’s legal conclusions, New Cingular’s motion for summary judgment with respect to the procedural sufficiency of its refund claim is granted. The Director’s cross-motion for summary judgment on the same point is denied. The matter is remanded to the Director for consideration of the substantive validity of New Cingular’s refund claim and, if the refund claim is found to be substantively valid, for a calculation of the appropriate amount of the refund. The Director shall issue his decision within sixty days of the date of this Opinion. The court retains jurisdiction over this matter.[4]

 This court makes no determination with respect to whether the United States District Court has jurisdiction to entertain a class action suit against a person required to collect New Jersey sales tax who erroneously collected the tax. The validity of the federal suit is not before the court. The only issue presented is whether the Director reasonably concluded that New Cingular's refund claim did not satisfy the procedural requirements of New Jersey law. New Cingular's motivation for settling the federal suit and filing a refund claim rather than challenging the federal court’s jurisdiction over the class action suits is not relevant to this court’s analysis.

 The agreement refers to ATTM, not New Cingular. Plaintiff used the terms interchangeably in its motion papers and takes the position, unchallenged by the Director, that the terms of the Global Settlement Agreement apply to New Cingular.

 Interestingly, while several States objected to the Global Settlement Agreement on a variety of grounds, including that a deposit into the Pre-Refund Escrow Fund does not constitute repayment of erroneously collected taxes to customers, New Jersey was not among the objectors.

 The court makes no determination with respect to New Cingular's claim that the Director's interpretation of N.J.S.A. 54:32B-20(a) violates the holding in Metromedia v. Director, Div. of Taxation, 97 N.J. 313, 478 A.2d 742 (1984).